judgment, be paid to the executor of the will of Catharine Shields, deceased, and that pending the determination of this motion the referee be enjoined from disposing of any of the moneys in his hands. Thereupon the court made an order directing the said Cunningham to pay back to the referee the distributive share paid to her, and ordering the referee to retain all of the moneys in his hands, and appointing him a referee to take proof of the claims of the creditors of the said Catharine Shields, deceased, and report to the court, and that, upon the coming in of the report of the said referee, an order be entered directing the said claims of the creditors of said deceased to be paid out of the moneys in the hands of the referee, and after such payment the balance to be distributed among the residuary legatees under the will. From such order the defendant Cunningham appeals.

We are unable to see how the same, in any view, can be sustained. The judgment still stands as a valid adjudication, and has not been disturbed in its force or efficacy since it was rendered. It is conclusive upon all parties, and fixed their rights. Jordan v. Van Epps, 85 N. Y. 427. The effect of this order is to disregard the provisions of the judgment, and, although the same was not modified or attempted to be, an entirely different direction has been given, which is in direct conflict with the terms of the decree. Judgments may not be so disregarded. The order does not in terms amend the judgment, and, if it did, it would be beyond the power of the court so to do. Heath v. Banking Co., 146 N. Y. 260, 40 N. E. 770. The effect of such amendment is to change the whole character of the judgment which has been entered. At most, the court would only possess the power to grant a new trial in that action. When the money was paid over to Sarah Cunningham, it became her property absolutely; and, in the absence of any change in the judgment, the court was powerless to control her right to its use.

It follows that the order should be reversed.

---

(32 App. Div. 465.)

### OWEN v. OGILVIE PUB. CO.

(Supreme Court, Appellate Division, Second Department. July Term, 1898.)

LIBEL—SUFFICIENCY OF PUBLICATION.

Where the manager of a corporation, in connection with its business, dictated a libelous letter to a stenographer in the corporation's employment, who copied and mailed the same to plaintiff, the dictation, copying, and mailing constituted but a single act of the corporation, and did not amount to a publication of the letter.

Appeal from trial term, Kings county.

Action by Annie Owen against the J. S. Ogilvie Publishing Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

A. W. Gleason, for appellant.
Albert A. Wray, for respondent.

HATCH, J.    Action to recover damages for an alleged libel claimed
to have been published by the defendant, a corporation.   The act
complained of was committed by the defendant's general manager.
The libel consisted in the dictation of a letter by the defendant's gen-
eral manager to a young lady employed by the corporation as a
stenographer and typewriter in the private office of the general man-
ager.    The letter was written in reference to the business of the
corporation, and had relation to a small sum of money missing from
the cash drawer, and the letter expressed a suspicion that the money
had been taken by the plaintiff during her employment by the de-
fendant, on the day before.    The law is elementary that there can be
no libel without a publication of the libelous matter.    We may as-
sume that this letter was libelous.    Was there a publication of it
by the corporation, within the meaning of the law?    Ordinarily, when
a letter is written and delivered to a third person, with the intent and
expectation that it shall be read by such person, and it is actually read,
the publication is complete.    Youmans v. Smith, 153 N. Y. 214, 47
N. E. 265.   Has such rule application to the facts of this case?   The
letter was dictated to the stenographer, and was by her copied out,
was signed by the manager, was then inclosed in an envelope, and sent
by mail to the address of the plaintiff.    It may be that the dictation
to the stenographer and her reading of the letter would constitute a
publication of the same by the person dictating it, if the relation ex-
isting between the manager and the copyist was that of master and
servant, and the letter be held not to be privileged.   Such, however,
was not the relation of these persons.   They were both employed by
a common master, and were engaged in the performance of duties
which their respective employments required.   Under such circum-
stances we do not think that the stenographer is to be regarded as a
third person in the sense that either the dictation or the subsequent
reading can be regarded as a publication by the corporation.   It was
a part of the manager's duty to write letters for the corporation, and it
was the duty of the stenographer to take such letter in shorthand,
copy it out, and read it for the purpose of correction.   The manager
could not write and publish a libel alone, and we think he could not
charge the corporation with the consequences of this act, where the
corporation, in the ordinary conduct of its business, required the
action of the manager and the stenographer in the usual course of con-
ducting its correspondence.   The act of both was joint, for the cor-
poration cannot be said to have completed the act which it required by
the single act of the manager, as the act of both servants was neces-
sary to make the thing complete.   The writing and the copying were
but parts of one act; i. e. the production of the letter.   Under such
conditions we think the dictation, copying, and mailing are to be
treated as only one act of the corporation; and, as the two servants
were required to participate in it, there was no publication of the
letter, in the sense in which that term is understood, by delivery to
and reading by a third person.   There was in fact but one act by
the corporation, and those engaged in the performance of it are not
to be regarded as third parties, but as common servants engaged in
the act.   We do not deny but that there can be publication of a libel

by a corporation by reading the libelous matter to a servant of such corporation, or delivering it to be read. Where the duties devolved upon such servant are distinct and independent of the process by which the libel was produced, he might well stand in the attitude of a third person through whom a libel can be published. But such rule may not be applied where the acts of the servants are so intimately related to each other as is disclosed in the present record, and the production is the joint act of both. As there was no other proof of publication aside from the reading by the stenographer, it is insufficient to uphold a finding that the libel was published. Nothing in Kiene v. Ruff, 1 Iowa, 482, conflicts with this view. That case presented the ordinary question of delivery, by the person writing the libel, of the libelous matter, to a third person to transcribe the same. The delivery for that purpose was held sufficient to constitute a publication, where such person actually transcribed the matter and forwarded the letter. Substantially similar doctrine is contained in Snyder v. Andrews, 6 Barb. 43. Such rule is not questioned, but the particular facts of this case remove it from its operation. It follows that the judgment should be reversed, and a new trial granted; costs to abide the event.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.