GEORGE T. GAMBRILL *vs.* JOHN W. SCHOOLEY.

*Libel and Slander—Publication of Libel by Dictation to Stenographer— Exemplary Damages Within the Discretion of the Jury—Instructions.*

The dictation of a libellous letter by the defendant to his private and confidential stenographer, by whom a typewritten copy is made and transmitted to the plaintiff after being signed by the defendant, is in law a publication of the libel, although there is no communication of the letter by the defendant to any other person.

In such case the plaintiff may maintain an action either for slander or libel.

But the writing and sending of a letter containing defamatory matter, which was not read or exhibited to any person by the writer is not a publication of the libel therein contained.

When the words charged in an action for libel are actionable *per se*, it is within the discretion of the jury to award exemplary damages or not, and this discretion should not be restricted by the instructions of the Court.

In an action of libel the defendant asked the Court to instruct the jury that if the defendant honestly and in good faith believed the defamatory statement contained in the letter constituting the cause of action to be true, and had grounds for such belief sufficient to satisfy an ordinarily prudent man that the statement was true, then the jury might in the exercise of their discretion award the plaintiff nominal damages merely. *Held*, that it was error to refuse this instruction, because thereby the jury were practically told that they must give exemplary damages and were denied the right to exercise their discretion to withhold them, if they found no malice on the part of the defendant.

Appeal from the Superior Court of Baltimore City (HARLAN,

C. J.) The jury returned a verdict for the plaintiff for $2,000. The Court aforesaid ordered a new trial unless plantiff consented to have the verdict reduced to $500, which was agreed to and judgment entered for $500.

*Plaintiff's 1st Prayer.*—That inasmuch as the defendant has not pleaded that the charges contained in the letter of date of February 8th, 1899, set out in the first count of the declaration and offered in evidence, are true, either in whole or in part, he admits that the plaintiff is not guilty of any of said charges, and that the jury must deal with the case upon that admission. (*Granted.*)

*Plaintiff's 2nd Prayer.*—That inasmuch as the defendant has not pleaded that the charges contained in his letter of date August 2nd (20th, 1898), set out in the second count of the declaration and offered in evidence are true, either in whole or in part, he admits that the plaintiff is not guilty of any of said charges, and the jury must deal with the case upon that admission. (*Granted.*)

*Plaintiff's 3 1-2 Prayer.*—If the jury find from the evidence that on the 8th day of February, 1899, the witness, Miss Willis, was in the employ of the defendant as a stenographer and typewriter in the office and business of the defendant, and on said day said defendant dictated to the witness, Miss Willis, the typewritten words and figures appearing in the letter of date of February 8th, 1899, and set out in the first count of the declartion and offered in evidence, and that said witness, Miss Willis, took down said dictation in shorthand characters upon paper, and thereafter and on the same day copied the same upon a typewriting machine upon the business paper of the said defendant, and in the form and manner appearing in said letter offered in evidence, and after said letter was thus typewritten the defendant subscribed his name thereto in his proper handwriting, and thereafter said letter was copied by a letter-press machine into the letter-book of the defendant by the witness, Miss Wills, in the course of her said employment in the business of the defendant, then such action in law constitutes a writing and publication by said defendant of the mat-

ters and things appearing in said letter, and if the jury further find that the person therein mentioned and referred to is the plaintiff, then the plaintiff is entitled to recover under the first count of the declaration. (*Granted.*)

*Plaintiff's 5th Prayer.*—If the jury find for the plaintiff they may award him such sum as under all the facts and circumstances of the case, they may deem to be a fair and just compensation to the plaintiff for the injury which they may find he sustained in consequence of the defendant's publication of the letters set out in the 1st and 2nd counts of the declaration ; and they may also in their discretion award exemplary or punitive damages as a punishment to the defendant, if they find that the publication proceeded from express malice or ill-will to the plaintiff. (*Granted.*)

*Defendaut's 9th Prayer.*—That the plaintiff has offered no evidence of such actual and substantial damages sustained by him by the publication to Miss Willis, the confidential stenographer and typewriter of the defendant, of the two letters of August 20th, 1898, and February 8th, 1899, or either of them, as authorizes the allowance by the jury of exemplary or punitive damages, and that the jury cannot therefore include in their verdict any allowance whatever for exemplary or punitive damages. (*Refused.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*George Whitelock* (with whom were *John Prentiss Poe* and *Edward T. Jones* on the brief), for the appellant.

The ruling in *Pullman* v. *Hill*, 1 Q. B. 524, (1891), that the dictation of a libellous letter to a shorthand writer and the copying of it by him on a typewriting machine is a publication so as to entitle the party to whom it is addressed to maintain an action of libel upon it, is effectively criticised in *Odgers on Libel and Slander*, 174, and we are not aware that it has been adopted elsewhere. The conditions, moreover, in England and America are distinctly variant in respect to the use

of private stenographers, and since the decision of the *Pull-man case*, the use of stenographers has become practically universal in the United States for the transaction of private business.   In view of the utility and almost universal employ-ment of stenographers in America and the very confidential nature of their duties, the English rule ought not to be fol-lowed in this country.   Public policy, convenience and neces-sity seem to forbid its adoption here.   Looking at the ques-tion apart from authority and precedent, the requisite fact of publication is not apparent.   Publication, in its most common sense, means the transmission of ideas and thoughts to the perceptions of people in general.   Publication, in the law of libel and slander, means the transmission of ideas and thoughts to the perceptions of a person other than the parties to the suit.   But to accomplish such a transmission in any aspect of the term, at least two mental operations are required.   The idea or thought must be generated in the mind of the trans-mitter, and to perfect the publication thereof to the recipient, the mind of the latter must perform a distinct operation of a twofold nature.   There must be not only a mere reception of the idea, but also a reflection on, or a digestion of, the same, in order to create a comprehension sufficient to complete the publication in the mind of the recipient.

Now in the case before us, it is not denied that there was a *reception* by the stenographer of the thoughts expressed by the appellant.   But this reception was but an instantaneous one, merely sufficient for their reduction to written characters. There was no attempt to digest the idea ; there was no com-prehension of its meaning.   It found, indeed, no lodgment in the brain of the recipient.   To the stenographer it meant nothing more than mere sound, mechanically transcribed as quickly as uttered.   The stenographer acted here as a mere phonograph or as a piece of office machinery ; the process which took place was purely a mechanical one.   Her entire concentration of mind was on the characters representing the dictated thoughts.   Her mind was not used at all, except as a channel, through which (as to her) meaningless utterances

flowed from the brain of the appellant to the paper on which
his ideas were transcribed.   These ideas not being retained,
not being reflected upon at all, and in fact not being compre-
hended in the slightest degree by the stenographer, it cannot
possibly be said the facts as here presented satisfy the require-
ments mentioned above as necessary to constitute a publica-
tion.

· The question involved in this case came up in *Owen* v. *Ol-
gilvie Publishing Co.*, 32 N. Y. App. Div. 465; 53 N. Y. Supp.
1033.   There the Court held that where the manager of a
corporation in connection with its business dictated a libellous
letter to a stenographer in the corporation's employment who
copied it and mailed it to the plaintiff, the dictation, copying
and mailing constituted but a single act of the corporation and
did not amount to a publication of the letter.   *Pullman* v.
*Hill, supra,* was not cited, but the New York decision shows
the trend of American judicial opinion and the disinclination
to adopt the narrow English view which was not applied in
*Boxius* v. *Goblet Freres*, 1 Q. B. (1894), 842.

Apart from the question of publication, the defendant's sec-
ond and third prayers bring up the propriety of the form of
action arising from the facts of this case.   For should the
Court consider that the dictation by the appellant to Miss
Willis of the two letters in question was such a communica-
tion to her of the defamatory words as to amount in law to a
publication, it is respectfully submitted that it is only as *slander*
that any cause of action could arise.   At the moment of time
when the alleged publication must have taken place, there had
been in actual reality no writing whatever.   It is only through
the doctrine of identification of the agent with the principal
that the subsequent writing down by Miss Willis of the de-
famatory words can be called an act of the appellant.   But if
this doctrine of identification is to be invoked to charge the
appellant with having written out the defamatory words and
so sustain the creation of a libel in the first instance, the log-
ical consequence of the invocation of the doctrine will be so
far to merge the agent and principal into one person as to

eliminate the idea of a third party from the whole matter and so destroy any foundation for treating the communication as a publication. On the other hand, eliminating the doctrine of identification, the use of which would, it seems, be fatal to the maintenance of an action in the form of slander as well as of libel, the appellee is relegated to the extremity of acknowledging, that at the time of occurrence of the publication no written defamanation was in existence, and that the communication up to this period of time being entirely oral, slander is the only form of action which can be maintained.

Where the defamatory matter is published to one person only, proof of damage must be confined to the evidence of that person, for the plain reason that it is only *quoad* that single person, that the defamatory matter can possibly injuriously affect the plaintiff. *Dicken* v. *Shepherd,* 22 Md. 412. And the Court properly so ruled in granting the appellant's fifth prayer,

Here it cannot be pretended that the copying by Miss Willis upon her typewriter of the words dictated to her by the appellant occasioned any injury to the appellee, and she has testified that she never disclosed the contents of the letters to any person whatsoever. The allegation in the declaration is that "in consequence of which premises, the plaintiff theretofore holding the situation of a railroad agent and doing a prosperous business as a general merchant and factor for merchants, lost his said situation, and his business and income became and are seriously diminished and impaired, and he has been and is greatly injured in his credit and reputation and other great loss and damage did sustain." But this allegation, appellee has distinctly failed to sustain.

There was no basis for the recovery of actual or substantial damages, nor did the appellee himself, as a witness, show any such actual damages. Such being the case, the Court below erred, we submit, in granting the appellee's fifth prayer, which instructed the jury that they could award the plaintiff such sum as under all the facts and circumstances of the case they should deem to be a fair and just *compensation* for the

injury sustained by him through the publication in question and *also* in their discretion could award *exemplary or punitive damages* as a punishment to the defendant for malice or ill-will.

Again the Court erred, we submit, by rejecting the appellant's ninth prayer as follows : " That the plaintiff has offered no evidence of such actual and substantial damages sustained by him by the publication to Miss Willis, the confidential stenographer and typewriter of the defendant, of the two letters of August 10th, 1898, and February 8th, 1899, or either of them, as authorizes the allowance by the jury of exemplary or punitive damages, and that the jury cannot include in their verdict any allowance whatever for exemplary or vindictive damages."

The proposition presented by this prayer is that where no actual damage has been claimed or shown, as it must be conceded is the case here, no exemplary or punitive damages can be allowed. *Stacy* v. *Portland Pub. Co.*, 68 Maine, 279; *Robinson & Pattison* v. *Calvin Goins*, 63 Miss. 500; *Louis Girard* v. *W. T. Moore, Jr.*, 86 Texas, 675. See also *Kuhn* v. *Ch. Ry. Co.* 74 Iowa, 140–1; *Freese* v. *Tripp*, 70 Ill. 496; *Schippel* v. *Norton*, 38 Kansas, 572; *Maxwell* v. *Kennedy*, 50 Wis. 648–9. *Jones* v. *Matthews*, 75 Tex. 3; *Schmig* v. *Donovan*, 13 Ill. App. 50.

Apart from authority this ought to be the law. The rule is that where the libel really injures the plaintiff, this injury may be *compensated*, and when the plaintiff is shown to be really and actually injured, *and* express malice or ill-will is found, the jury, in addition to the *compensatory* damages, may give *punitive* damages. But *in the absence of actual injury*, entitling the plaintiff to *compensation*, it· surely cannot be right to permit the jury to *punish* the defendant. Exemplary or punitive damages are sometimes allowed in *addition* to actual damages, but should never be permitted to be given where no actual injury is shown demanding *compensation*. *Compensation*, in other words, is the foundation upon which the law sometimes allows *punishment* to be built. But *punishment* is not justifiable where there is no right to *compensation*. The injury done to the appellee was nominal, merely resulting at most from

what is claimed to have been a *strictly technical publication.* Only nominal damages should therefore have been allowed.

*William Colton, Harry C. Gaither* and *Alexander R. Hagner*, for the appellee, submitted the cause on their brief.

The dictation of the libellous letter to the defendant's secretary, and the signing of it when typewritten constituted a publication of the libel. *Pullman* v. *Hill* (1891), 1 Q. B. 524; *Poe on Pleading*, sec. 179; *Odgers on Libel and Slander*, ch. 6. A message sent by telegraph is actionable, because the contents of the telegram are necessarily communicated to all the clerks through whose hands it passes, and so with the postcard. *Whitfield et al.* v. *S. E. Ry. Co.*, E. B. & E. 115; *Williamson* v. *Freer*, L. R. 9 C. P. 393. The delivery of a manuscript to a printer to be printed is a sufficient publication, if any copies be printed; even though the author repented and suppressed all the copies printed. *For the compositor must have read it. Baldwin* v. *Elphinston*, 2 W. Bl. 1037. This may be considered a somewhat harsh decision, as the compositor does not attend to the substance of the manuscript, but sets it up in type mechanically; but it has been recently acted on in America. *Trumbull* v. *Gibbons*, 3 City Hall Rec. 97; and see *Watts* v. *Fraser et al.*, 7 Ad. & E. 223.

Sending a libellous letter, or speaking defamatory words to the plaintiff's agent or solicitor, is a sufficient publication to a third person. *Tuson* v. *Evans*, 12 Ad. & E. 733; *Huntley* v. *Ward*, 1 F. & F. 552; *Hancock* v. *Case*, 2 F. & F. 711; *Stephens* v. *Kitchener*, 4 Times L. R. 159. Where the defendant wrote a letter to the plaintiff himself, but read to a friend before posting it, this was held a publication to the friend. *Snyder* v. *Andrews*, 6 Barbour, N. Y. 47; *McCoombs* v. *Tuttle*, 5 Black. Ind. 431. So, where the defendant before posting a letter to the plaintiff had it copied, *held* a publication by the defendant to his own clerk, who copied it. *Kiene* v. *Ruff*, 1 Clark, Iowa, 482; *State* v. *McIntyre*, 115 N. C. 769; *Archambault* v. *Tel. Co.*, 14 Quebec L. R. 8.

A publication need not be made in the common use of the

word ; it is sufficient if the defamation is made known to a single person. *Adams* v. *Lawson*, 17 Grattan, 257. Where two persons have participated in the composition of a libellous letter written by one of them, which was afterwards put in the postoffice and sent by mail to the person to whom addressed, such participation was held to be competent, and sufficient evidence to prove the publication by both. *Muller* v. *Butler*, 6 Cush. 72. Any person who by words causes another to write or print the thing conveying the libellous matter, may be guilty, *as if his own hand traced the lines. Cochran* v. *Butterfield*, 18 N. H. 117; *Peterson* v. *W. U. Telegraph Co.*, 65 Minn. 18.

Vindictive or exemplary damages are awarded where the jury desire to mark their sense of the defendant's harsh conduct by fining him to a certain extent. They, therefore, punish the defendant by awarding the plaintiff damages in excess of the amount which would be adequate compensation for the injury which he inflicted on his reputation. Thus, where a letter was sent privately to one person only, on whom it made no impression, the jury yet awarded 3,000 pounds damages on the ground that there must have been some vindictiveness. *Adams* v. *Coleridge*, 1 Times L. R., page 87. It is clearly competent to a jury in a proper case to find vindictive damages in an action of libel or slander. *Townsend* v. *Hughes*, 2 Mod. 150; *Emblen* v. *Myers*, 6 H. & N. 54; *Bell* v. *Midland Ry. Co.*, 10 Com. B. N. S. 287. The damages in such an action are not limited to the amount of pecuniary loss which the plaintiff is able to prove. *Davis & Son* v. *Shepstone*, 11 App. Cas. 191; 13 *Am. & Eng. Ency. Law*, 432.

The jury may regard the probable future as well as the actual past. *True* v. *Plumley*, 36 Me. 483; *Tripp* v. *Thomas*, 3 Barn. & Cres. 427. And proof of special damages not necessary. *Mayne Law Dam.*, 367. When words are actionable without special damages, the jury may take into consideration, not only the injury which has arisen, but which may arise from the slander, because such fresh injury will constitute no fresh cause of action. *Marks* v. *Jacobs*, 76 Ind. 216–219;

*Cook* v. *Field,* 3 Esp. 133; *Kelly* v. *Huffington,* 3 Cranch Cir. Ct. Rep. 81. See also *Swift* v. *Tickerman,* 31 Conn. 285; *Markham* v. *Russell,* 12 Allen, 573; *Hastings* v. *Stetson,* 126 Mass. 331; s. c., 130 Mass. 78; *Marble* v. *Chapin,* 132 Mass. 225.

Besides the injury to the character of the plaintiff is not the sole element of damage. *The jury have a right to consider the mental suffering of the plaintiff caused by the publication of the slanderous words.* Recovery for mental distress occasioned by the publication of defamatory language was also allowed in the cases of *Mahoney* v. *Betford,* 132 Mass. 393; *Chesley* v. *Thompson,* 137 Mass. 136; *Rea* v. *Harrington,* 58 Vt. 181. In the latter case it was held that words imputing a possible crime were *per se* actionable, although not believed by the hearer and though the charge could not be true. *And the plaintiff was allowed to testify as to his mental suffering caused by the slander, in effect that he could not sleep nights, could not work, etc.* If the words are actionable *per se,* evidence of actual damage to the character and mental suffering need not be given. *Boldt* v. *Budwig,* 19 Neb. 739. See also *Sedgwick on Damages,* secs. 350, 351, 377, 387, 388; *Newell on Defamation,* sec. 12; *Wood's Mayne on Damages,* sec. 49; *Alabama Ry. Co.* v. *Sellers,* 93 Ala. 9; *Kennett* v. *Adamson,* 44 Minn. 121; *Volz* v. *Blackmar,* 64 N. Y. 444.

The right to recover in an action of libel upon the facts established by the proof in this case and the measure of damages upon such recovery are well established by the authorities in this State. No explanation of the terms used by the appellant in the letters addressed by him to the appellee is necessary. These letters are plainly actionable. The language is libellous *per se.* No attempt was made by the appellant to justify in the pleadings, under which the appellant admitted that the plaintiff was not guilty of any of said charges, and that the appellee was therefore entitled to recover in his action if the publication was made out as required by the plaintiff's 3½ and 4½ prayers. And the measure of damages fixed by the 5th prayer is in the accepted form. *Hagan* v. *Henry,* 18 Md. 177;

*Long* v. *Eackle*, 4 Md. 454; *Lewis* v. *Daily News Co.*, 81 Md. 466; *Wilms* v. *White*, 26 Md. 380; *Snyder* v. *Fulton*, 34 Md. 128, 134; *Nolan* v. *Traber*, 49 Md. 460; *Negley* v. *Farrow*, 60 Md. 158; *Blumhardt* v. *Rohr*, 70 Md. 328.

PEARCE, J., delivered the opinion of the Court.

This is an action of libel in which the appellee recovered a judgment for five hundred dollars against the appellant in the Superior Court of Baltimore City. The plaintiff offered five prayers, all of which were granted, and the defendant offered fifteen prayers, of which the 4th, 5th, 6th, 7th, 8th, 10th, 11th, 12th, 13th and 14th, were granted and his 1st, 2nd, 3rd, 9th and 15th were rejected. A single exception was taken by the defendant to this ruling on the prayers, and the three following questions arises upon the exception :

1st. Whether the dictation of alleged libellous letters to defendant's private and confidential stenographer, their reduction by her to stenographic characters, and subsequent reduction to the characters of the alphabet by means of a typewriter, their signing by the defendant, and their transmission by his direction to the plaintiff, is in law a publication of such letters, where there is no communication of any of said letters, in any manner, to any other person.

2nd. Whether in such case, the proper action is for libel or slander.

3rd. Whether under the testimony in this case, the jury was properly instructed as to the allowance of exemplary or vindictive damages.

There were three counts in the declaration upon three separate letters, and the case was tried on the general issue plea, there being no plea of justification alleging the truth of any of the charges contained in any of the letters, either in whole or in part.

Of the libellous character of each of these letters there can be no question, but the letter in the third count was shown by the uncontradicted testimony to be wholly in the handwriting of defendant and never to have been read or exhibited to any one

but the plaintiff, and the jury was properly instructed by the defendant's fourth prayer that there could be no recovery on the third count.

It was very earnestly and ably argued by the appellant's counsel that as the two letters in the first and second counts were not *otherwise published*, than as above stated, there was no *actionable publication* of either letter, so as to make either one a libel, and consequently, that the Court erred in granting the plaintiff's 3 ½ and 4 ½ prayers, and in rejecting the defendant's first, second and third prayers, which, respectively, raised the contentions of the parties on this point.

This is certainly an important question, and one which has never before been raised in this Court. Indeed, the appellant's counsel states in his brief, that it has never been expressly ruled upon in America, though he has referred us to a case in the Appellate Division of the Supreme Court of New York (*Owen* v. *Ogilvie Pub. Co.*, 32 App. Div. 465.), which he contends supports his positions. The apppellee's counsel has submitted a very full brief, but has referred us to no American case upon this point. If such authorities existed, we may safely assume they would not have escaped the well-known diligence of counsel, and we have found none such in our own examination ; but the principles and considerations upon which this question should be decided, are not, in our opinion, dffi-cult to determine, and the instructive English cases which have been cited are in accord with these principles and considerations.

Before considering the argument of the appellant, it will be well to recall the definition of publication, given by competent authority, as necessary to constitute slander a libel. Mr. Odgers, in his work on *Libel and Slander*, p. 150, defines publi-cation, as applicable either to slander or libel, as, "the commu-nication of the defamatory words to some third person ;" and on page 1, he says : "False defamatory words, if written *and published*, constitute a libel ; if spoken, a slander." It is ob-vious however that publication is essential to either, and that the words, "if published," though not repeated in the latter

·clause, must be understood, as if repeated. For, to shout aloud defamatory words on a desert moor where no one hears them, is not a publication of the slander, nor is the utterance of such words in a foreign language, a publication, if no one present understands their meaning. *Idem.* 151.

For the same reason, very clearly, if one should write a de-famatory·letter, and hand it to a third person, to be read, who does not understand and cannot read that language, there would be no publication of the libel. In *Pullman v. Hill*, 1 ·Q. B. Div. (1891), p. 529, LOPES, L. J., defines publication of a libel ·in the exact words cited from Mr. Odgers, and in the same case, LORD ESHER, Master of the Rolls, defines it, more fully, and perhaps with more technical accuracy, as, "the making known the defamatory matter, *after it has been written*, to some person other than the person to whom it is written." Appellant's counsel, in his brief, says, with equal clearness and accuracy: "Publication, in the law of libel and slander, means the transmission of ideas and thoughts to the perception of a person, other than the parties to the suit."

Bearing in mind these definitions and simple illustrations of what is, and what is not, publication, it will be seen that the argument that there has been no actionable publication in this ·case, divides itself into two branches. The theory of the first branch is, that while there was in fact a physical or mechan-ical *reception* by the stenographer of the thoughts expressed by the appellant, that such reception was instantaneous only, ·and merely sufficient for their reduction to written characters; but that there was no comprehension, and no lodgment, of their meaning in the brain of the recipient, who acted as a mere phonograph, and whose function in that regard was not a mental, but purely a mechanical process; so that there was no such *perception* as is requisite to constitute publication. This theory is both ingenious and subtle, but we cannot be persuaded it is sound. · We cannot doubt that the dictation to Miss Willis, though taken down in stenographic characters, produced in her mind as full and complete perception of the ✝thoughts of the appellant, as a slower dictation, for the pur-

pose of reduction to ordinary characters, would have produced in the mind of one not a stenographer. If this were not so, there could be no assurance that there would be an accurate reproduction of the matter dictated, such as common knowledge gives assurance of from any skillful stenographer. A communication therefore to a stenographer must be regarded precisely as a communication to an ordinary amanuensis, and as establishing all that is ordinarily necessary to constitute publication.

The second branch of the argument is, that in view of the fact that Miss Willis was the private and confidential stenographer of the defendant, and in view of the almost universal employment, in this country, of such stenographers, and the necessity for such employment consequent upon the demands of business, that a communication to such a stenographer, should be made an exception to the general rule, and be held not to be an actionable publication. But we cannot adopt this view. Apart from any precedent or authority, we can perceive no good reason why such an exception should be made to the rule. Neither the prevalence of any business customs or methods, nor the pressure of business which compels resort to stenographic assistance, can make that legal which is illegal, nor make that innocent which would otherwise be actionable. Nor can the fact that the stenographer is under contractual or moral obligation to regard all his employer's communications as confidential alter the reason of the matter. This defense was made in *Williamson* v. *Freer*, L. R. 9 C. P. 393, where it was held that the unnecessary transmission by a postoffice telegram, of libellous matter, which would have been privileged, if sent in a sealed letter, avoids the privilege ; LORD COLERIDGE, C. J. saying : "Although the clerks are prohibited under severe penalties from disclosing the contents of telegrams passing through their hands, *still there is a disclosure to them.*"

In *Pullman* v. *Hill*, already cited, the exact question here presented was decided. There, the letter containing the defamatory matter was dictated by the managing director of a corporation to a clerk, who took down the words in short-

hand, and then wrote them out fully by means of a typewriting machine, and the letter thus written was copied by an office boy in a letter-press book. When it reached its destination, it was in the ordinary course of business, opened by a clerk of the plaintiff; and it was held that the letter must be taken to have been published both to the typewriter and to the copy-press boy, as well to the plaintiff's clerk. LORD ESHER, M. R., in the course of his opinion said: "I do not think that the necessities or the luxuries of business can alter the law of England. If a merchant wishes to write a letter containing defamatory matter, and to keep a copy of the letter, he had better make the copy himself." LOPES, L. J., said: "It is said business cannot be carried on if merchants may not employ their clerks to write letters for them in the ordinary course of business. I think the answer to this is very simple. I have never yet heard that it is in the usual course of a merchant's business to write letters containing defamatory statements. If a merchant has occasion to write such a letter, he must write it himself and copy it himself, or he must take the consequences." KAY, L. J., said: "The consequence of such an alteration in the law of libel would be this, that any merchant or solicitor who desired to write a libel concerning any person would be privileged to communicate the libel to any agent he pleased if it was in the ordinary course of his business. That would be an extraordinary alteration of the law, and it would enable people to defame others to an alarming extent."

We were referred to *Boxsius* v. *Goblet Freres*, 1 Q. B. Div. (1894), p. 843, as evincing a disposition to qualify the rule in *Pullman* v. *Hill*, but we cannot discover such disposition, and if we could, we should not be inclined to follow it. There, the libellous letter was dictated by a solicitor, acting in behalf of and at the direction of his client, and copies were made as in the case mentioned. The Court distinguished the case very clearly from *Pullman* v. *Hill*, holding, through two of the same judges, that the solicitor owed to his client the duty to act on his instructions, and that if the solicitor had communicated

directly with the plaintiff, the communication would have been privileged, and that he could discharge that duty, as he did other business of the office, in the ordinary way without losing the privilege. But there was no question of privilege in *Pullman* v. *Hill*, and there is none here, as the appellant owed no duty in the matter to any one. The typewriter had no conceivable interest in hearing or seeing the letters, and there could be therefore no privilege between her and the appellant.

In *Owen* v. *Ogilvie Pub. Co.*, 32 App. Div. N. Y. 465, the alleged libellous letter relating to the business of a corporation, was dictated by its manager to its stenographer, who wrote it out in shorthand, copied it upon a typewriter and mailed it. The manager and stenographer were held to be servants of a common master, and to be engaged in the performance of duties which their respective employments required, and that under such circumstances, the stenographer should not be regarded as a third person, in the sense that either the dictation or the subsequent reading should be regarded as a publication by the corporation. The English cases mentioned were not referred to, but the Court nevertheless said : " It may be that the dictation to the stenographer and her reading of the letter, would constitute a publication of the same by the person dictating it, if the relation existing between the manager and the copyist was that of master and servant, and the letter be held not to be privileged.'' Upon the exact question here involved, the above extract from the opinion in that case, seems to afford slender support to the appellant's contention, and what it does decide is not in accord with the views expressed by this Court in *Carter* v. *Howe Machine Co.*, 51 Md. 294, in which JUDGE ALVEY said it would seem to be now clear, whatever may have been the former state of judicial opinion upon the subject, that corporations are liable for all·acts, whether willful or malicious, of their agents or servants, done in the course of their employment, and that actions for such injuries, including libel, could be sustained against corporations in any case where, under similar circumstances, such actions could be sustained against individuals for the acts of their servants. It is true that that

case was not an action for libel, but it sufficiently indicates that this Court would not be astute to find reasons for relieving corporations from liability in libel cases, for want of technical publication.   We think for the reasons given above, that the defendants first prayer was properly rejected.

Apart from the question of publication, the defendant's second and third prayers raise the additional question whether, under the pleadings in this case, the action must not have been for slander, instead of libel, but we have no difficulty on this point.   We have no doubt that the dictation of these letters to the stenographer was the publication of a slander, for which if nothing further had been done by either, an action of slander could have been maintained, but we have no more doubt that the stenographic notes, the typewritten copy and the letter-press copy, constituted the publication of a libel, and that either slander or libel could be maintained, as the appellee should elect.   This conclusion, we think, necessarily follows from what we have already said, without more formally stating the reasons, and our conclusion is not shaken by Mr. Odgers' criticism of the decision in *Pullman* v. *Hill* upon the form of action, to be found on p. 174 of his last edition.   We therefore think the defendants second and third prayers were properly rejected, not only for the reasons now given, but for those applicable to defendant's first prayer, and that the plaintiff's 3½ and 4½ prayers were for the same reasons properly granted.   The plaintiff's first and second prayers were not questioned at the argument and are so clearly correct as to require no notice.   The plaintiff's fifth prayer was also properly granted for reasons which will appear when we come to consider the defendant's ninth prayer.

The defendant's ninth prayer was properly rejected, because it *precluded* the jury from including in their verdict any allowance whatever for exemplary or punitive damages.   Whenever the words charged in an action for slander or libel, are actionable *per se*, as in this case, the damages are exclusively within the sound discretion of the jury.   13 *Amer. & Eng. Ency. of Law*, 432; *Tripp* v. *Thomas*, 3 Barn. & Cress. 427; *Marks* v.

*Jacobs*, 76 Ind. 216; *Nolan* v. *Traber*, 49 Md. 470; *Negley* v. *Farrow*, 60 Md. 148. Whether exemplary damages shall be given or not, is in all cases for the jury. *Jerome* v. *Smith*, 48 Vt. 230; *Boardman* v. *Goldsmith*, 48 Vt. 403.

The assessment of damages is peculiarly the province of a jury in an action for libel. The damages in such an action are not limited to the amount of pecuniary loss which the plaintiff is able to prove. *Davis* v. *Shepstone*, 11 App. Cases, 191, per LORD HERSCHELL. The jury must not be restricted by a direction not to give such damages. *De Vaughn* v. *Heath*, 37 Ala. 595.

The plaintiff's fifth prayer is in accord with these principles and was therefore properly granted. We cannot however avoid the conclusion that there was error in the rejection of the defendant's fifteenth prayer, which asked that the jury be instructed, if the defendant honestly and in good faith believed the statements contained in the letters to be true, and had grounds for such belief sufficient to satisfy an ordinarily prudent and cautious man that such statements were true, then the jury might take into consideration all the circumstances of the case, and in the exercise of their discretion, award to the plaintiff nominal damages merely. This prayer is very carefully guarded by the requirement to find honest belief of the truth of the charges, and of reasonable ground for such belief, and in its conclusion is substantially the converse of the proposition contained in the plaintiff's fifth prayer which we have said was properly granted. By the rejection of the defendant's fifteenth prayer, the jury were practically told they must give exemplary damages, and were absolutely refused the discretion to withhold them. But in no case has a plaintiff any legal right to exemplary damages. Such damages depend upon the case, and the evidence and finding of the jury. *Jerome* v. *Smith*, *supra*..

Where there is evidence of circumstances sufficient to uphold a verdict for exemplary damages, the question whether they shall be given, or not, is one for the jury. *Boardman* v. *Goldsmith*, 48 Vt. 403. And it is error to instruct them they

must give exemplary damages. *Sedgwick on Damages*, 333; *Hawk* v. *Ridgway*, 33 Ill. 473.

The words used here being actionable *per se*, although there was no proof of actual and substantial damages sustained by the publications to Miss Willis of the two letters, the jury could not properly have been deprived of their discretion to give exemplary damages, if they found malice, nor could they on the other hand, either by the granting of an erroneous instruction or the rejection of a proper one, be deprived of their discretion to refuse to award exemplary damages if they found no malice.

For the error in the rejection of the defendant's fifteenth prayer it will be necessary to reverse the judgment that a new trial may be had.

> *Judgment reversed with costs to appellant above and below, and new trial awarded.*

(Decided February 21st, 1901.)