## GLOBE FURNITURE CO. v. WRIGHT.

(Court of Appeals of District of Columbia. Submitted Jan. 7, 1920. Decided April 5, 1920.)

No. 3281.

1. **Appeal and error ⚌927(7)—Plaintiff's theory accepted in passing on motion for peremptory instruction.**

   In determining whether or not defendant's motion for a peremptory in- struction should have been granted, the Court of Appeals must accept plaintiff's theory of the testimony as correct.

2. **Libel and slander ⚌44(3), 51(4)—Where letter shown to defendant's em- ployés, occasion held privileged.**

   Where a letter from defendant to plaintiff, charging that receipts held by plaintiff for payments to defendant had been tampered with and raised, was written partly by defendant's general manager and partly by the bookkeeper, and was shown to the bookkeeper and a collector, the occasion was conditionally privileged, each of such persons having a duty to perform for the employer respecting the letter, and the letter was within the privilege, and, there being no malice, the letter is not actionable.

Appeal from the Supreme Court of the District of Columbia.

Action by Charles T. Wright against the Globe Furniture Company. From a judgment for plaintiff, defendant appeals. Reversed and re- manded, with directions.

Henry E. Davis and E. A. Swingle, both of Washington, D. C., for appellant.

L. H. David, of Washington, D. C., for appellee.

SMYTH, Chief Justice. From a judgment in favor of Wright, who was the plaintiff below, the Globe Furniture Company, a corporation, prosecutes this appeal.

The company is engaged in the business of selling furniture on what is known as the installment plan. On that plan it sold some furniture to Wright. The collector of the company called upon him to collect one of the installments. A dispute arose with respect to the amount due. The collector, upon looking over Wright's receipts, came to the conclusion that some of them had been changed by raising the amounts for which they had been given. With Wright's permission he took pos- session of the questioned receipts, leaving copies in their place. Upon returning to the office of the company, he made known his suspicions to the general manager. The bookkeeper of the company was consulted for the purpose of ascertaining whether or not the receipts harmonized with the books. It was found that they did not. Thereupon a letter was prepared and mailed to Wright. The part embracing the alleged libel reads:

"Beg to advise that our representative, Mr. Rogers, has turned over to the writer four receipts, which three of them do not correspond with our books, and show very plainly that they have been tampered with and raised from their original amounts, which is a serious offense on the part of some one."

There was testimony on the part of the plaintiff that the letter was written partly by the bookkeeper and partly by the general manager, and, before being mailed, was shown to the bookkeeper and the collector. This was denied by the general manager, who said that he alone wrote it, and that it was mailed without having been shown to or read by any one else. At the close of all the testimony the defendant moved for a directed verdict. The motion was overruled, and an exception taken. The action of the court in this regard is the only error assigned.

[1, 2] For the purpose of determining whether or not the defendant's motion for a peremptory instruction should have been granted, we must accept plaintiff's theory of the testimony as correct. The letter was written in the usual course of business. Each one of those who read it had a duty to perform for his employer in connection with it. By reading the letter he learned only what the three had talked about before the letter was drafted. The general manager had a right to advise with the bookkeeper and the collector touching the contents of the letter, for the purpose of ascertaining whether the statements therein were in conformity with the facts as they understood them. Under these circumstances, was the occasion privileged, and, if so, did the letter come within the privilege? We think the answer must be in the affirmative.

Neither in this country nor in England are the authorities in harmony on the subject, but we think the better-reasoned cases approve the conclusion which we have reached. In Pullman v. Hill [1891] 1 Q. B. 524, it was held that the dictation of a libel by an officer of a mercantile company to a stenographer employed by it, and its delivery to an office boy to have letter press copies made, were publications, and hence actionable. But Lord Esher, M. R., in Boxsius v. Goblet Freres, [1894] 1 Q. B. 842, held that, where a solicitor dictated to his stenographer a letter containing libelous statements, which was afterwards copied into a letter book by another clerk, the letter was not actionable, saying:

"It is the duty of the solicitor to write and send this letter, and it is his duty to do that in the ordinary and reasonable way. The duties of a solicitor are not to one client only, but to all his clients, and he has to take measures to perform them with all due diligence and according to the necessary and reasonable method of conducting business in a solicitor's office. If a solicitor is instructed to write defamatory matter on a privileged occasion on behalf of a client, he must do this business as he does other business of the office, in the ordinary way, and that involves his having the communication taken down or copied by a clerk in his office and copied into the letter book."

He distinguished Pullman v. Hill on the ground that it was not within the ordinary business of the merchant in that case to write the defamatory matter complained of. One of the judges thought that the disclosure of the letter to the clerks was a publication, but evidently did not regard this as destroying the privilege of the occasion. The doctrine of the Boxsius Case was approved and applied in Edmondston v. Birch & Co., [1907] 1 K. B. 371. Commenting on the Boxsius and Pullman Cases, the court, speaking through Collins, M. R., held:

"The result of the two cases to which I have alluded, taken together, appears to me to be that, where there is a duty, whether of perfect or imperfect obligation, as between two persons, which forms the ground of a privileged occasion, the person exercising the privilege is entitled to take all reasonable means of so doing, and those reasonable means may include the introduction of third persons, where that is reasonable and in the ordinary course of business; and, if so, it will not destroy the privilege."

Again:

"If the duty is such as to give rise to a privileged occasion, then the fact that it is only one of imperfect obligation cannot affect the mode in which the privilege may be reasonably exercised."

Another one of the judges, concurring with the Master of the Rolls, said:

"In my opinion the law on the subject, as laid down in the cases, amounts to this: If a business communication is privileged, as being made on a privileged occasion, the privilege covers all incidents of the transmission and treatment of that communication which are in accordance with the reasonable and usual course of business."

In Nichols v. Eaton, 110 Iowa, 509, 81 N. W. 792, 47 L. R. A. 483, 80 Am. St. Rep. 319, Judge Deemer, an experienced and learned jurist, speaking for the court, said that where the medical director of an insurance association wrote to an agent of the association that the plaintiff, a local medical examiner of the association, was guilty of forgery, the occasion was privileged. He said:

"In determining whether or not the communication was qualifiedly privileged, regard must be had to the occasion and to the relationship of the parties. One may make a publication to his servant or agent, without liability, which, if made to a stranger, would be actionable. In the protection of his own interests, one may make a communication to his agent or servant without subjecting himself to liability, unless he exceeds the privilege and does more than his duty or interest demands. Again, when one has an interest in the subject-matter of a communication, and the person to whom it is made has a corresponding interest, every communication honestly made in order to protect such common interest is privileged, by reason of the occasion. Generally this interest must be a pecuniary one, but it may arise out of the relationship or status of the parties. The statement must be such as the occasion warrants, and must be made in good faith to protect the interests of the publisher and the person to whom it is addressed."

In another case we find this language:

"It is inconceivable how the business of the country, under the present conditions, can be carried on, if a business man or corporation must be subject to litigation for every letter containing some statement too strong, where it is only sent to the person to whom directed, and only heard by a stenographer to whom the letter is dictated." Cartwright-Caps Co. v. Fischel, 113 Miss. 359, 74 South. 278, L. R. A. 1918F, 566, Ann. Cas. 1917E, 985.

It was said in Phillips v. Bradshaw, 167 Ala. 199, 52 South. 662, that the reason for the rule that a defamatory communication from an employer to an employé is held conditionally privileged, where it relates to matters pertaining to the employment and is made in good faith, is that in such case the law is said to withdraw the legal inference of malice which ordinarily arises from the mere making of a defamatory statement.

We have not overlooked the decision of the Court of Appeals of Maryland in Gambrill v. Schooley, 93 Md. 48, 48 Atl. 730, 52 L. R. A. 87, 86 Am. St. Rep. 414, which follows the doctrine of Pullman v. Hill; but, much as we respect the opinions of that court, we prefer the reasoning of the cases we have cited in support of our conclusion as more in harmony with modern business requirements. What would be the effect of the unnecessary repetition of the libel by the stenographer or other person to whom the communication had been made need not be determined now, although this observation is found in the Cartwright-Caps Case, supra:

"If the stenographer should, in violation of his or her duties, disclose such statement, there might be a liability because of the negligence of the person in employing an improper person as stenographer."

Some courts hold that communications such as the one we are considering are not actionable, because the stenographer or other employé, to whom the communication was made before it was mailed to the person for whom it was intended, is not a third person, within the technical meaning of such term, but is merely an impersonal facility used in making and transmitting the communication. Owen v. J. S. Ogilvie Publishing Co., 32 App. Div. 465, 53 N. Y. Supp. 1033; Central of Ga. R. Co. v. Jones, 18 Ga. App. 414, 89 S. E. 429. But we prefer to put our decision upon the ground that the occasion was conditionally privileged, that the letter was within the privilege, that there was no malice, and therefore that the letter is not actionable.

In view of the law as we find it, the judgment of the lower court must be reversed, at the cost of the appellee, and cause remanded, with directions to grant a new trial.

Reversed.