ANNA F. OSTROWE, Plaintiff, *v.* RICHARD L. LEE, Defendant.

Supreme Court, New York County, June 21, 1930.

*Pfeiffer & Crames* [*Alexander Pfeiffer* and *Jacob B. Goldberg* of counsel], for the plaintiff.

*Joseph G. Abramson* [*Henry Waldman* of counsel], for the defendant.

LEVY, J. This is a motion to dismiss the complaint for insufficiency. The first cause of action alleges that the defendant dictated a defamatory letter to his stenographer and caused the latter to read and transcribe it. The question presented is whether there was a publication of the libelous matter.

In *Pullman* v. *Hill & Co.* (1 Q. B. 524 [1891]) it was held that the dictation of a letter to a stenographer does constitute a publication. As Lord ESHER, M. R., pointed out (at p. 527): " Certainly it is shewing it to a third person; * * * I cannot, therefore, feel any doubt that, if the writer of a letter shews it to any person other than the person to whom it is written, he publishes it. If he wishes not to publish it, he must, so far as he possibly can, keep it to himself, or he must send it himself straight to the person to whom it is written. There was, therefore, in this case a publication to the type-writer." Further on, the court took occasion to say (at p. 529): " I do not think that the necessities or the luxuries of business can alter the law of England. If a merchant wishes to write a letter containing defamatory matter, and to keep a copy of the letter, he had better make the copy himself." LOPES, L. J., concurred, stating (at p. 530): " It is said that our decision will cause great inconvenience in merchants' offices and will work great hardship. * * * I think the answer to this is very simple. I have never yet heard that it is in the usual course of a merchant's business to write letters containing defamatory statements. If a merchant has occasion to write such a letter he must write it himself, and make a copy of it himself, or he must take the consequences."

In *Gambrill* v. *Schooley* (93 Md. 48, referred to in Newell on Libel & Slander [4th ed.], at p. 242, as " the leading American case ") the same view was adopted. The following excerpt from the court's opinion (at pp. 60 and 61) is enlightening: " Bearing in mind these definitions and simple illustrations of what is, and what is not, publication, it will be seen that the argument that there has been no actionable publication in this case, divides itself into two branches. The theory of the first branch is, that while there was in fact a physical or mechanical *reception* by the stenographer of the thoughts expressed by the appellant, that such reception was instantaneous only, and merely sufficient for their reduction to written characters; but that there was no comprehension, and

no lodgment, of their meaning in the brain of the recipient, who acted as a mere phonograph, and whose function in that regard was not a mental, but purely a mechanical process; so that there was no such *perception* as is requisite to constitute publication. This theory is both ingenious and subtle, but we cannot be persuaded it is sound. We cannot doubt that the dictation to Miss Willis, though taken down in stenographic characters, produced in her mind as full and complete perception of the thoughts of the appellant, as a slower dictation, for the purpose of reduction to ordinary characters, would have produced in the mind of one not a stenographer. If this were not so, there could be no assurance that there would be an accurate reproduction of the matter dictated, such as common knowledge gives assurance of from any skillful stenographer. A communication therefore to a stenographer must be regarded precisely as a communication to an ordinary amanuensis, and as establishing all that is ordinarily necessary to constitute publication.

" The second branch of the argument is, that in view of the fact that Miss Willis was the private and confidential stenographer of the defendant, and in view of the almost universal employment, in this country, of such stenographers, and the necessity for such employment consequent upon the demands of business, that a communication to such a stenographer, should be made an exception to the general rule, and be held not to be an actionable publication. But we cannot adopt this view. Apart from any precedent or authority, we can perceive no good reason why such an exception should be made to the rule. Neither the prevalence of any business customs or methods, nor the pressure of business which compels resort to stenographic assistance, can make that legal which is illegal, nor make that innocent which would otherwise be actionable. Nor can the fact that the stenographer is under contractual or moral obligation to regard all his employer's communications as confidential alter the reason of the matter. This defense was made in *Williamson* v. *Freer*, L. R. 9 C. P. 393, where it was held that the unnecessary transmission by a postoffice telegram, of libelous matter, which would have been privileged, if sent in a sealed letter, avoids the privilege; Lord COLERIDGE, C. J., saying: 'Although the clerks are prohibited under severe penalties from disclosing the contents of telegrams passing through their hands, *still there is a disclosure to them.*' "

A number of other American decisions have held that the dictation of a defamatory letter to a stenographer is a publication. (*Nelson* v. *Whitten*, 272 Fed. 135; *Ferdon* v. *Dickens*, 161 Ala. 181; *Berry* v. *City of New York Ins. Co.*, 210 id. 369.) In 36

C. J. 1225, the rule is stated as follows: " It seems to be considered that the dictation of a libelous matter to a stenographer is a publica· tion to him, although there is no communication of its contents to any other person. However, there are some holdings making exceptions to the rule in cases where the dictation is by an officer of the corporation employed by it." Within the exceptions referred to are the New York cases of *Owen* v. *Ogilvie Publishing Co.* (32 App. Div. 465) and *Wells* v. *Belstrat Hotel Corp.* (212 id. 366). In the *Owen* case a letter having reference to the business of the defendant corporation, and containing libelous matter, was dictated by its manager to a stenographer employed by it. The stenographer transcribed the letter, had the manager sign it, and mailed it to the plaintiff. HATCH, J., writing for the Appellate Division, based the decision that there was no publication upon the circumstance that both the manager and the stenographer were servants of a common master and were engaged in the performance of duties which their respective employments required. He said (at p. 466): " It may be that the dictation to the stenographer and her reading of the letter would constitute a publication of the same by the person dictating it, *if the relation existing between the manager and the copyist was that of master and servant, and the letter be held not to be privileged.*" (Italics mine.) The reasoning upon which the defend· ant was held liable could not have any application except to ..a corporate defendant; (at p. 467): " The manager could not write and publish a libel alone, and we think he could not charge the corporation with the consequences of this act, where the corporation, in the ordinary conduct of its business, required the action of the manager and the stenographer in the usual course of conducting its correspondence. The act of both was joint, * * * and those engaged in the performance of it are not to be regarded as third parties, but as common servants' engaged in the act." In the *Wells* case the dictation was also to an employee of the defendant corporation, and the reasoning appears to be similar, the court saying (at p. 369): " It might as well be said that the agent of the defendant corporation who dictated the letter and who afterwards signed it was the third person to whom a publication was made, as to claim that the stenographer who wrote the letter was a third person to whom the defendant published the alleged offensive matter. (*Owen* v. *Ogilvie Publishing Co.*, 32 App. Div. 465.) The Court of Appeals of Georgia, in *Central of Georgia R. Co.* v. *Jones* (18 Ga. App. 414), in a syllabus by the court, said: ' Where an officer of a corporation, in the prosecution of its business, dictates to his stenographer a letter, directed and mailed to another agent of the corporation, charging therein the commission of a

crime by a third person * * * *all being employed by the same corporation and being in the performance of their duties*, the stenographer and the agent to whom the letter is mailed are not to be regarded as third persons.' " (Italics mine.)

The correctness of the decision in the *Owen* case is apparently questioned by our Court of Appeals in the comparatively recent case of *Kennedy* v. *Butler* (245 N. Y. 204), Crane, J., writing as follows (p. 206): " The *Ogilvie* case did not come to this court and apparently is in conflict with the cases of *Pullman* v. *Hill & Co., Ltd.* ([1891] 1 Q. B. 524); *Gambrill* v. *Schooley* (93 Md. 48); *Ferdon* v. *Dickens* (161 Ala. 181); *Nelson* v. *Whitten* (272 Fed. Rep. 135). Newell in his work on Libel and Slander speaks of the *Gambrill* decision as being the leading American case (4th ed. p. 242). (See, also, Odgers on Libel & Slander [5th ed.], p. 161.)

" Whether this court would uphold the ruling in the *Ogilvie* case or follow these other decisions we are not called upon to determine as the point is not here. A later case (*Wells* v. *Belstrat Hotel Corporation*, 212 App. Div. 366) referred to it. That corporate action confined within itself, although libelous in its nature but never circulated or distributed beyond the agents or servants taking such action, may not amount to a publication, see *Senancour* v. *Societe La Prevoyance* (146 Mass. 616); *Landis* v. *Campbell* (79 Mo. 433)."

If doubt is thus cast upon the propriety of the decision in *Owen* v. *Ogilvie Publishing Co.* (*supra*) in connection with a corporate defendant, it would seem to follow that it is even more doubtful that an individual defendant may successfully contend that dictation of defamatory matter to his stenographer is not a publication. At any rate, the opinions in both the *Owen* case and that of the *Wells* case appear to be limited in their application to actions against a corporate defendant, and no case has been brought to my attention where the doctrine of those decisions has been extended to an individual defendant.

It seems to me that the argument that the necessities of modern business require a holding that dictation to a stenographer is not a publication overlooks the fact that one may publish letters with impunity if they are not defamatory and also false. It is only where the contents of the communications are libelous and untrue that one dictates them to a stenographer at the risk of being held accountable in a proper action. It may be that such a situation should be cloaked with privilege, but privilege and publication are entirely distinct matters. As Judge Crane well said in *Kennedy* v. *Butler* (*supra*, at p. 207): " Whether such a publication were privileged — a privileged communication — is another matter.

Privilege presupposes publicity. The plea of privilege is unnecessary if there has been no publication."

For the reasons indicated, it is my opinion that the first cause of action is sufficient in law. As to the second cause of action, the words alleged to have been spoken by the defendant appear to charge the plaintiff with the commission of a crime without resort to the innuendo. A good cause of action in slander is, therefore, alleged.

The motion to dismiss the complaint is denied, with ten dollars costs.