ANNA F. OSTROWE, Respondent, v. RICHARD L. LEE, Appellant.*

First Department, November 7, 1930.

* Affg. 137 Misc. 457.

*Henry Waldman* of counsel [*Joseph G. Abramson*, attorney], for the appellant.

*Jacob B. Goldberg* of counsel [*Alexander Pfeiffer* and *Sidney Keats* with him on the brief; *Pfeiffer & Crames*, attorneys], for the respondent.

O'MALLEY, J.   The defendant's motion attacked the sufficiency of each of the causes of action pleaded.   One is for libel; the other, slander.   It is asserted that the first fails to show publication; and the second fails to set forth defamatory matter.

The first cause alleges that the defendant composed a libelous letter, wherein he stated: " If you [referring to plaintiff] do not appear in this office Monday with the money and notes, my attorney will be instructed to go to the District Attorney's office to procure a warrant for your arrest and Lipsit will be notified that this money and notes were given you upon false representation."

It is alleged that the defendant thereby intended to charge the plaintiff with larceny; that he intentionally and maliciously published such matter by dictating it and by causing it to be read and transcribed by a stenographer.   It is further alleged that the defendant mailed the letter to the plaintiff and that the statements were malicious, libelous and untrue.

As already noted, the complaint is attacked solely upon the ground that a publication is not charged.   It is urged that the dictation of a libelous letter to one's stenographer, followed by transcription and mailing to plaintiff, is not a publication.   Decisions of this court, relied upon in part, are cited (*Owen* v. *Ogilvie Publishing Co.*, 32 App. Div. 465; *Wells* v. *Belstrat Hotel Corporation*, 212 id. 366), but apparently they are not deemed decisive, even by appellant's counsel, for in his brief he states: " * * * It is our claim that this question comes squarely before this court as a novel question of law." And again: " * * * The question presented here is a novel one and this court is not bound by precedent."

The authorities cited were considered by the learned justice at Special Term, and distinguished upon the facts (137 Misc. 457). In the *Ogilvie* case the defendant was a corporation. Its manager dictated the alleged libelous matter to a stenographer in the defendant's employ, who copied and mailed it to the plaintiff. It was held in substance that the dictation and transcription constituted but a single act of the defendant and did not amount to a publication. The decision was predicated upon the theory that the manager and stenographer were servants of a common master and engaged in the performance of duties required by their respective employments, and that the subsequent mailing was the act of the defendant itself. It was said: "The manager could not write and publish a libel alone, and we think he could not charge the corporation with the consequences of this act, where the corporation, in the ordinary conduct of its business, required the action of the manager and the stenographer in the usual course of conducting its correspondence. The act of both was joint, * * * and those engaged in the performance of it are not to be regarded as third parties, but as common servants engaged in the act." It was further said, however (p. 466): "It may be that the dictation to the stenographer and her reading of the letter would constitute a publication of the same by the person dictating it, if the relation existing between the manager and the copyist was that *of master and servant,* and the letter be held not to be privileged." (Italics ours.)

In the *Wells* case the defendant was likewise a corporation and the dictation was by the hotel's manager, to its stenographer, who transcribed the letter and mailed it. The decision cited and followed the reasoning of the *Ogilvie* case. It also cited a decision of the Court of Appeals of Georgia (*Central of Georgia R. Co.* v. *Jones,* 18 Ga. App. 414), which was factually similar.

Since these cases were decided our Court of Appeals had before it the case of *Kennedy* v. *Butler, Inc.* (245 N. Y. 204, 205). There the defendant, a large grocery concern with various branches, sent the alleged libelous circular to its branch managers throughout the city. Publication was challenged, but it was held to have been established.

A reading of the opinion would lead to the conclusion that some doubt, at least, was cast upon the correctness of the *Ogilvie* decision, limited though it was to a corporate defendant. It was said: "The *Ogilvie* case did not come to this court and apparently is in conflict with the cases of *Pullman* v. *Hill & Co., Ltd.* (L. R. [1891] 1 Q. B. 524); *Gambrill* v. *Schooley* (93 Md. 48); *Ferdon* v. *Dickens* (161 Ala. 181); *Nelson* v. *Whitten* (272 Fed. Rep. 135). Newell in his work on Libel and Slander speaks of the *Gambrill* decision

as being the leading American case (4th ed. p. 242). (See, also, Odgers on Libel & Slander [5th ed.], p. 161.)

"Whether this court would uphold the ruling in the *Ogilvie* case or follow these other decisions we are not called upon to determine as the point is not here."

The court also referred to the *Wells* case and intimated that libelous matter which is not circulated or distributed beyond the agents or servants of the corporation taking such action, may not amount to a publication.

It is to be observed that we are here concerned with the acts of an individual. In such a case the dictation by the defendant to his stenographer who reads and transcribes, constitutes a publication. Numerous authorities and particularly those cited in the decision of the Court of Appeals in the *Kennedy* case, support this view. In the English case cited, *Pullman* v. *Hill & Co., Ltd.* (L. R. [1891] 1 Q. B. 524), Lord ESHER, M. R., said: "Certainly it is shewing it to a third person; * * * I cannot, therefore, feel any doubt that, if the writer of a letter shews it to any person other than the person to whom it is written, he publishes it. If he wishes not to publish it, he must, so far as he possibly can, keep it to himself, or he must send it himself straight to the person to whom it is written. There was, therefore, in this case a publication to the typewriter."

In answer to the argument that the necessities of modern business require a different rule, it was said (p. 529): "I do not think that the necessities or the luxuries of business can alter the law of England. If a merchant wishes to write a letter containing defamatory matter, and to keep a copy of the letter, he had better make the copy himself."

In the same connection, LOPES, L. J., said (p. 530): "It is said that our decision will cause great inconvenience in merchants' offices and will work great hardship. * * * I think the answer to this is very simple. I have never yet heard that it is in the usual course of a merchant's business to write letters containing defamatory statements. If a merchant has occasion to write such a letter he must write it himself, and make a copy of it himself, or he must take the consequences."

Upon the same point the learned justice at Special Term said (p. 461): "It seems to me that the argument that the necessities of modern business require a holding that dictation to a stenographer is not a publication overlooks the fact that one may publish letters with impunity, if they are not defamatory and also false. It is only where the contents of the communications are libelous and untrue that one dictates them to a stenographer at the risk of

being held accountable in a proper action. It may be that such a situation should be cloaked with privilege, but privilege and publication are entirely distinct matters."

In our view the decisions in the *Ogilvie* and *Wells* cases (*supra*) do not here control and we are free to express our opinion upon an issue for the first time presented. This being so, we choose to adopt what to us seems to be the more logical and salutary rule.

We are clearly of opinion that the second cause of action is sufficient to charge slander. It is alleged that the defendant maliciously and falsely stated to another person the following concerning the plaintiff: " Tell her [referring to the plaintiff] that Peters is through and if I don't hear from her by Wednesday, I am going to the District Attorney's office. I don't know why she took the money."

It is alleged that the defendant thereby intended to charge the plaintiff with larceny or some criminal act. We think that such intention may reasonably be inferred and that proof of falsity and malicious utterance would constitute slander.

It follows that the order should be affirmed, with ten dollars costs and disbursements, with leave to the defendant to answer upon payment of said costs.

DOWLING, P. J., MARTIN and SHERMAN, JJ., concur; MERRELL, J., dissents and votes for reversal on the authority of *Owen* v. *Ogilvie Publishing Co.* (32 App. Div. 465); *Wells* v. *Belstrat Hotel Corporation* (212 id. 366).

Order affirmed, with ten dollars costs and disbursements, with leave to the defendant to answer within twenty days from service of order upon payment of said costs.