ALABAMA & VICKSBURG RAILWAY COMPANY *v.* J. S. O. BROOKS.

1. PLEADING. *Immaterial error.*

Sustaining a demurrer to a plea cannot be complained of if the defenses set up were substantially availed of under other pleas.

2. LIBEL. *Master and servant. Railroad superintendent. Authority.*

A railroad company is liable in damages for a libelous letter written by its superintendent relating to a matter within the scope of his authority, in this case the letter being in response to a claim of damages on account of the loss of baggage of a passenger.

3. SAME. *Qualified privilege. Motive.*

One to whom application is made for information may write or speak words otherwise inadmissible, but the scope of the defamatory matter must not exceed the exigency of the occasion. He cannot take license to gratify malice or to state as facts libelous matter which he does not believe to be true.

4. SAME. *Privileged occasion. Proof of malice.*

In an action for libel, if the occasion was privileged the burden of proof is on the plaintiff to establish malice. There must be some evidence of its existence beyond the mere falsity of the charge.

5. SAME. *Liability of railroad company. Libelous letter.*

In an action against a railroad company based upon a libelous letter from its superintendent in reply to a communication from attorneys, pro-

pounding a claim for damages in favor of plaintiff, the defendant will be held liable upon proof of malice, or the absence of honest belief in the truth of the statements contained in the letter.

6. SAME.   *Motive.*   *Belief in truth of statements.*

In such case the company is not liable if its servant, in making the reply, keeps himself within the privilege of the occasion; otherwise, if he takes advantage of the opportunity to maliciously libel plaintiff, or to write concerning him libelous matter which he does not believe to be true.

7. SAME.   *Motive.*   *Question for jury.*

Whether the servant in writing the letter honestly believed the truth of the statements therein is a question for the jury, and his assertion is not conclusive of what the motive was.

8. LIBELOUS LETTER.   *Receipt by attorneys.*   *Publication.*

Where the privilege of the occasion is exceeded and a letter defamatory of a client is written his attorneys, the publication is complete when the libelous letter is received and read by the attorneys.

FROM the circuit court of Warren county.
HON. J. D. GILLAND, Judge.

Action of slander brought by the appellee against the appellant, based upon an alleged libelous letter written by its superintendent.   In May, 1890, the plaintiff was a passenger on the defendant's road, and checked a trunk and valise from Meridian to Vicksburg.   The valise was lost or mislaid at Vicksburg, and, the officers not being able to deliver it, appellee placed the matter of his claim against the company, for the loss of the valise and contents, in the hands of Dabney & McCabe, attorneys at law, at Vicksburg, delivering to them the check.   He made out an account against the company for the loss of the valise and contents, which embraced various items of wearing apparel, etc., amounting to $25, memorandum books, $50, accounts and receipts, $50, and one certificate of stock in the Hale Pavement Co., valued at $1,000, and six days' loss of time, $30; total, $1,155.   This account was sworn to.

On May 16, 1890, his attorneys wrote and mailed, at Vicksburg, the following letter:

"*The Alabama & Vicksburg Railway Co., Vicksburg, Miss.:*

GENTLEMEN—Inclosed we send you a bill in favor of J. S. O. Brooks for the sum of $1,155, for a valise and contents lost, as itemized in said bill, by the negligence of your company a few days since.

We would be glad to have this matter settled up without any further delay, and unless steps are speedily taken by your company looking to its adjustment, we will institute suit against you for double the amount claimed in this bill.

Yours respectfully,    DABNEY & MCCABE."

This letter was received by W. W. Bond, superintendent of the railway company, at Vicksburg. On May 27, 1890, he wrote the following in reply:

[CLAIM OF J. S. O. BROOKS, $1,155.]

"*Messrs. Dabney & McCabe, City:*

GENTLEMEN—I have yours of the 16th inst., inclosing very modest claim for only $1,155, on account of the alleged loss of J. S. O. Brooks' valise.

I have investigated this matter thoroughly, and find that this claim is based simply on Mr. Brooks holding one of our checks. This valise, together with his trunk, arrived at Vicksburg 'O. K.,' and he simply walked off with the valise without giving the baggage-master an opportunity to take the check up, and the next day sent down the check, together with one for his trunk, and requested that we deliver this baggage. As the matter stands, I think that if Mr. Brooks sees fit to press his suit we will have to take some action in regard to his taking this property away while it was in possession of the railroad company without giving up his check.

Yours truly,    W. W. BOND, *Supt.*"

This letter was received by Dabney & McCabe, and on it this action is based.

On June 8, 1890, Bond wrote the following letter to F. A. Zimmerman, general baggage agent of the railway company, at Cincinnati:

[CLAIM OF J. S. O. BROOKS.]

"*F. A. Zimmerman, Esq., G. B. A., Cincinnati:*

DEAR SIR—I inclose herewith some papers in regard to alleged loss of valise by Mr. J. S. O. Brooks, together with copy of letter which I wrote to the attorneys who had the matter for this gentleman. I am very well satisfied, from what I learn, that Mr. Brooks got his valise, and doubt very much if any further action will be taken in the matter, as I have never received an answer to my letter to Messrs. Dabney & McCabe.          • Yours truly,     W. W. BOND."

And on June 17, Zimmerman replied to him as follows:

[CLAIM OF J. S. O. BROOKS.]

"*W. W. Bond, Esq., Superintendent, Vicksburg, Miss.:*

DEAR SIR—I have your favor of the 8th inst., together with other papers pertaining to this claim. Same have been referred to our general counsel, who states that the burden of proof is on the company to show delivery of trunk to owner, and if this cannot be done, the company must pay for such of the articles as can reasonably be considered the baggage of a passenger.

This excludes all but the $25. If any thing further is heard from the claimant or his attorneys, please advise.

Yours truly,          G. B. A."

These letters were all introduced in evidence by the plaintiff.

Among other things, the defendant introduced the following letters:

"VICKSBURG, MISS., May 21, 1890.

*W. W. Bond, Esq., Superintendent, City:*

DEAR SIR—Please find statement of J. G. Seymour, baggage-agent at this place, relative to the claim of J. S. O. Brooks at this place. Mr. Seymour further stated that this

party, when he came down himself to this depot, and he (Seymour) told him he was tracing for it (valise), as it might have been sent out on that evening's train, Brooks kept saying, 'No, it has been stolen or lost; you never will find it.' As this fellow was a book-agent, and the appearance of himself and traps rather dilapidated, I would not be surprised if he had picked up his grip the day of his arrival and made off with it. Seymour says this fellow went off to Texas (Troupe) with the same trunk and a new valise. In this case I have requested, in your name, Baggage-masters Ramsey and Cash to trace at every station. When you receive papers, if you wish I can see Mr. Dabney. Real amount of damage is evidently not over $10 or $15.

Yours truly,<br>
EDW. L. STEVENSON, <i>Claim Agent.</i>"

[STATEMENT OF J. G. SEYMOUR, BAGGAGE-AGENT, VICKSBURG, MISS.]

"VICKSBURG, MISS., May 19, 1890.

From W. M. Boyd, baggage-master train No. 1 of May 5, I received one black valise, with C., N. O. & T. P. check, Meridian to Vicksburg, No. 636. Also a zinc trunk, check No. 644, Meridian to Vicksburg, and placed both trunk and valise in baggage-room. On morning of May 6, about 10:30 o'clock, John Schlottman's boss drayman called with the checks for the trunk and valise. I went to baggage-room and found the trunk, but could not find the valise, which I had placed near the door on previous morning. I wired Meridian, but received no answer. Have seen both A. & V. and V. S. & P. main baggage-masters, but can find no trace. I cannot account for the loss, except on theory of theft. The trunk and valise were the property of a Mr. J. Brooks, who was a sort of peddler of medical books—a book agent. The trunk was an old, rusty-looking affair, and the grip was a very small and old one; was a small hand-satchel in fact, and greatly worn.          J. G. SEYMOUR, *B. A.*

R. R. to W. W. Bond, Superintendent.    E. L. Stevenson."

"VICKSBURG, MISS., May 19, 1890.

*F. A. Zimmerman, Esq., G. B. A., Cincinnati, Ohio:*

DEAR SIR—On train No. 1, May 5, B. B. Meridian local checks 636 and 644 were delivered me by T. B. M. Boyd. The former was a small, dark brown, rusty valise, and the latter a zinc trunk, tied with a rope. I put the valise in baggage-room myself, and my porter did likewise with the trunk. On May 6, party presented the two duplicates for his baggage. I delivered the trunk, and, upon turning to the place where I left the valise, discovered it was not there. Thinking it may have been put on No. 6 in error, I wired Meridian if he had it, but did not receive any answer. I then told all the baggage-masters to look out for it, and inquired of all the porters in Vicksburg if they had seen it, but without success. The owner, who was a seedy-looking book peddler, called on Mr. Hardy about it, and Mr. Hardy traced both lines. It must, I think, have been stolen out of the room while I was busy on the platform or in the car. It is my impression that the owner must have taken it himself, as I have never lost any thing before, and the porters never touch any thing with a check on it. The party claims $1,155 as the value of contents of grip. Please trace both lines for it. I would have notified you before, but, as Mr. Hardy was tracing it, concluded to wait for the result of same. The grip had merchandise check 636 on it.

Yours truly,     J. G. SEYMOUR, *B. A.*"

The evidence for plaintiff showed that he had not taken the valise, as charged in the letter of Bond. The evidence tended to show also that the above communications constituted about all the information that Bond had when he wrote the letter complained of, and that he did not confer personally with Stevenson, the claim agent, and Seymour, the baggage-agent, in reference to the loss of the valise. Outside of the statements made in the communications from his subordinates, it seems that the superintendent instituted little or

no inquiry as to the facts. It was shown that Stevenson knew nothing about the loss of the valise. Bond was examined as a witness for defendant, and testified that he did not know the plaintiff, and that he had no malice or ill feeling against him, and that he addressed the letter to the attorneys in good faith, and with no intent to defame. Outside of the statement contained in the letter, there was no evidence of malice.

After the claim for damages was propounded, the plaintiff discovered that the certificate of stock, valued at $1,000, was in his trunk. Beyond the loss of the valise and contents and the delay of plaintiff in seeking to recover it, no damages were sustained by him, and he sustained no pecuniary damages by the writing of the letter.

There was evidence tending to show that it was within the scope of the duties of Bond, as superintendent, to have the investigation made as to the alleged loss of the valise and to write the letter complained of; but this was controverted by the evidence for the defendant, and the rules and regulations promulgated by the general manager of the railway company were introduced, showing that claims for lost baggage should be referred to the general baggage-master.

The above facts, and others mentioned in the opinion, were shown on the trial. At the conclusion of the plaintiff's testimony the defendant moved to exclude the same and for judgment. This motion was overruled. The defendant also asked the court to instruct peremptorily in its favor, and this was refused.

The following instructions were given at the instance of plaintiff:

"1. If the jury believe from the evidence that W. W. Bond was the superintendent of defendant railroad company, and, as such officer, had general superintendence of the business of the road relating to the transporting and delivery of the baggage of defendant's passengers, and power of investigating and reporting to them on lost baggage, and, while

being so, in his capacity as such superintendent, wrote or caused to be written, and caused to be delivered to Dabney & McCabe the letter described in the declaration, then his said acts were in law the acts of defendant.

"2. If the jury believe from the evidence that the injury complained of was inflicted maliciously or wantonly, and with circumstances of contumely or indignity, or that it was conceived in the spirit of mischief, or of criminal indifference to civil obligations, they may take this into consideration in determining the amount of damages to which they may think the plaintiff is entitled.

"3. If the jury believe from the evidence that defendant, by its superintendent, acting within the scope of his authority, wrote the letter mentioned in the declaration, and caused it to be delivered to Dabney & McCabe, that is a publication of the matter complained of.

"4. If the jury believe from the evidence that defendant is guilty of the writing and publication of the libel, and that the same is not privileged, plaintiff is entitled to recover such damages as the jury may award, without proof of any actual damages; and the jury may, in such case, find a verdict for an amount sufficient to punish defendant for the wrong done in libeling plaintiff.

"5. The jury are instructed that if they believe from the evidence that the act of Bond in writing the letter in question was within the general scope of his powers as agent of defendant, then he had authority to write the letter as the act of the defendant.

"6. The defense that the occasion of the communication was privileged cannot avail defendant unless there was an honest belief by W. W. Bond, when he wrote the letter, that the statements therein were true, based upon reasonable grounds for such belief, or probab / cause.

"7. The jury are instructed that the fact that Dabney & McCabe were attorneys for J. S. O. Brooks when they wrote the letter of May 16, 1890, to the defendant railroad com-

pany, to which the letter sued on is a reply, does not of itself debar plaintiff from a right to a verdict, if otherwise entitled to one, and that for the purpose of publication the writing to Dabney & McCabe was the same as writing to any other person.

"8. Although the jury may believe from the evidence that Bond believed when he wrote the letter complained of that the facts stated therein were true, still this is not sufficient unless this belief was an honest one, based upon reasonable grounds; the belief, without a proper basis therefor, is not sufficient."

The following instructions for defendant were given as asked:

"2. The construction of the letter from W. W. Bond, superintendent, to Dabney & McCabe, and the determination of its intent, meaning and import, is a matter left wholly to the jury, in view of all the facts and circumstances of the case in evidence, and they are the exclusive judges as to whether said Bond intended to charge the plaintiff with larceny and an attempt to obtain money under false pretenses, and with a criminal prosecution therefor.

"7. The mere fact that Zimmerman, the general baggage-agent of the defendant corporation, did not, in his reply to the letter of W. W. Bond to him, shown in evidence, from him to Dabney & McCabe, though a copy of said letter may have reached said Zimmerman, does not prove a ratification of Bond's act by the defendant.

"8. If the jury believe from the evidence that the letter written by the superintendent of defendant's railroad to Dabney & McCabe was in reply to one from them in evidence, and that at the time such reply was written the said superintendent had no right or authority to reply to such letter addressed to defendant, and should have referred the same to the president and general baggage-master of defendant, but did reply of his own motion, and without consultation with or direction of the president of defendant, or the general

manager thereof, his act is not the act of defendant, nor are its consequences to be visited upon it, and they will find for the defendant.

"11. All the instructions or charges in this case, both for plaintiff and defendant, are to be considered together as a whole; they constitute the law of the case. So that, when the jury considers an instruction for the plaintiff or defendant, they must look to see to what extent it is modified, limited or explained by the other instructions in the case.

"12. Where in the instructions the 'power' of the superintendent is referred to, the court means authority to represent and act for the railroad company as to the matter spoken of."

The defendant asked the following instructions, which were given after being modified. In making the modifications the words inclosed in brackets were stricken out of the the instructions as asked, and the words in italics were inserted by the court, to all of which the defendant excepted:

"1. It is the duty of the plaintiff in this suit, before the defendant company can be held to respond in damages for the act of W. W. Bond, superintendent, to satisfy you, by a preponderance of evidence, that the letter to Dabney & McCabe, annexed to the declaration, was so written by said Bond within the scope of his authority, and in the due administration by him of his office [under rules and regulations prescribed therefor by his superior officer]. The mere fact of his having written such letter is not of itself evidence of his authority to write it. Unless, therefore, you are satisfied, by a preponderance of the evidence, that said Bond had the authority to answer letters addressed to defendant company about a matter connected with its baggage department, and as the representative of the company, you will find for the defendant.

"3. If the jury believe from the evidence that Dabney & McCabe wrote the letter in evidence to defendant, and that W. W. Bond, superintendent, had authority to reply thereto,

and did, upon the written statements of E. L. Stevenson and J. G. Seymour, make the reply, copy of which is annexed to declaration, in good faith, honestly believing the facts stated *in his letter to be true,* and with no purpose to defame the plaintiff, they will find for the defendant.

"4. The mere falsity of the statement contained in the letter of W. W. Bond to plaintiff's attorney, in reply to a letter to them from defendant, is not sufficient to entitle plaintiff to a recovery. You must also believe from the evidence that said Bond [believed] *did not honestly believe* that the facts stated in his reply were [false] *true.* In reaching a belief as to the said statements, said Bond had the right to rely upon the written reports made to him by Stevenson and Seymour, and to base his belief upon them [those] *if they* constituted reasonable ground or probable cause, as stated in plaintiff's charges, and if he did so rely upon *them,* and honestly believed [them] *the statements of his letter to be true,* and wrote his said letter to Dabney & McCabe accordingly, the communication was privileged, and the jury will find for the defendant.

"5. The letter written by Bond to Dabney & McCabe is, under the circumstances disclosed by the evidence in this case, what is known in law as a qualified privileged communication, and unless the evidence in the case shall show to the satisfaction of the jury that said Bond was actuated by malice against the plaintiff in writing said letter, *or did not honestly believe the statements therein to be true,* they must find for defendant, though they may believe that Bond wrote said letter in the discharge of the duties committed to him by the defendant company.

"6. The issue to be determined under defendant's third plea is whether W. W. Bond wrote the letter annexed to the declaration in good faith, with no purpose to defame the plaintiff, and honestly believing the statements contained in it to be true. The question in this case is not whether the statements contained in said letters are right or wrong, true

or untrue, but whether the like statements were made to said Bond by Stevenson and Seymour, and whether said Bond honestly believed them. In reaching your conclusion as to the said belief of said Bond, his testimony on the stand under oath is evidence of the fact, and you will find for the defendant, unless you are satisfied from *all* the evidence, that, in writing said reply, said Bond was actuated by the malicious purpose to defame the plaintiff, *or did not honestly believe the statements of his letter to be true.*

"9. The letter of Dabney & McCabe, addressed to defendant company, could only be opened and replied to by [its president] *some agent thereof, duly authorized,* in contemplation of law; and before a reply to said letter, written by said Bond, superintendent, could be made the basis of an action by the plaintiff against the defendant, it devolved upon plaintiff affirmatively to show that said Bond was expressly authorized so to do, or that he was in the habit of doing so, to the knowledge of the president, and his acts in that regard were approved by said president, *or that it was within the scope of his duty as superintendent.* As to these, the burden of proof is on the plaintiff, and unless he has shown to your satisfaction that said Bond was expressly authorized by the president to write said letter, or that his having written it was brought to the knowledge of the president and was approved by him, *or that it was within the scope of his duty as superintendent,* the jury will find for defendant.

"10. The expression in plaintiff's second charge, if they believe from the evidence 'that the injury was inflicted maliciously or wantonly, and with circumstances of contumely or indignity, or that it was conceived in the spirit of mischief, or criminal indifference to civil obligations,' is not to be construed by the jury as a suggestion by the court that there is evidence of the facts stated, but is to be determined, as the charge recites, by the jury from the proven facts; and, before they can reach such conclusion, they must believe from the evidence that Bond, acting within the scope of his authority,

wrote the letter to Dabney & McCabe *without honestly* believing the statements therein contained to be [false] *true*, and for the purpose of charging the plaintiff with stealing his own valise."

The court refused the following instruction asked by defendant:

"The plaintiff in this case having failed to prove express malice, and having testified that he was not injured in fame or reputation, and failed to prove that he suffered any actual damage whatever, if the jury should find for the plaintiff, they will only assess in his favor nominal damages."

Verdict of $500 for plaintiff. Motion for new trial overruled; defendant appealed.

The opinion contains a further statement of the case.

*Nugent & McWillie,* for appellant.

The receipt of the letter by Dabney & McCabe was not a publication. "If the only publication that can be proved is one made by the defendant in answer to the application from the plaintiff, or some agent of the plaintiff, demanding explanation, if fair and relevant, it will be held privileged if the plaintiff brought it on himself." 13 Am. & Eng. Ency. L., 422.

The letter was written in reply to a communication from the attorneys of plaintiff that called for investigation and the payment of a claim in large part frivolous, or some showing against such payment. The requisites of a publication are that the writing must be so exposed as to be read by at least some one third person. Clearly this has reference to a writing not provoked or called for by the plaintiff or his attorney.

It was not pretended that the letter complained of was written by Bond under the direction or with the knowledge of the defendant. The law of appellant's corporate life provides that its affairs are to be managed by a board of directors. The company is not liable for the action of the superin-

tendent in a case like this.   21 How. (U. S.), 207; Town-
shend's Lib. & Slan., § 265; 2 Manitoba L. Rep., 253.

As we gather, from the case of *Baskom* v. *Railroad Co.*, 19
Reporter, 83, the publication of a list showing that a car-
penter had been discharged for stealing, was a privileged
communication, but it was held that the corporation would
be bound for the act of its superintendent in the particular
case.   The general manager had dismissed the carpenter
without special instructions from the directors, and placards
were posted describing the offense and stating the dismissal.
See 33 Up. Kan., Q. B. Rep., 8; 4 Q. B., 462.

Proof of malice express was required.   21 Am. Dec., 102;
2 Pick., 310; 13 Am. Dec., 431; 50 N. Y., 275.

There was no evidence whatever of express malice.   If
the authorities on which we rely are applicable, the plaintiff
should have been non-suited, or at most only nominal dam-
ages should have been awarded.   He himself testified that
he had not been damaged.

The court erred in giving the instructions for plaintiff, and
in modifying those asked by the defendant.   The plaintiff
must show actual malice before he can recover, and that is a
fact for the determination of the jury.   21 Am. Dec., 109.

If the privilege, as held by the court, was qualified, the
onus was on the plaintiff to prove actual malice.   46 Conn.,
117; 68 Iowa, 726; 30 Mo., 502; 68 Ind., 538; 88 *Ib.*, 401;
19 Md., 418; 4 Jones L. (N. C.), 327.

So far have the courts gone in this direction, that it is held
the duty of the trial judge to stop the case if the evidence
deduced as to malice is consistent either with its existence or
non-existence.   13 Am. & Eng. Ency. L., 430.

That the words are strong is no evidence of malice, if in
defendant's view of the facts strong words were justified.
That the statement is admitted to be untrue is no evidence
that it was made maliciously, though proof that the defend-
ant knew it was untrue when he wrote it would be conclusive
evidence of malice.   On this, the pivotal question, the court

erred to our prejudice, and the error dominated the whole case. The plaintiff should have been required to show that Bond was actuated by a malicious purpose to defame, *or, in other words, that he knew his statements to be false.*

As to the authority of Bond to impose liability on the company by writing the letter in question, we refer to 1 Rorer on Railroads, p. 667; Wood's Field on Corp., § 171; 1 Morawetz, Corp., § 538; 2 *Ib.*, 757.

The case on which appellant relies, and which is cited in Odgers on Slander, 227, is reported in 95 Eng. Com. L. Rep., p. 513. The court held that the letter to the plaintiff's attorney in that case was not privileged, because there was no legal or moral duty to be discharged by writing the letter to the attorney heaping abuse upon the client.

The motion for a new trial should have been sustained. The damages allowed were excessive.

*Dabney & McCabe,* for appellee.

Corporations are liable in damages as in case of individuals. Morawetz on Corp., 727; 13 Am. & Eng. Ency. L., 448; Townshend on Lib. & Slan., p. 475; 59 Miss., 581; 21 How, (U. S.), 202; 9 Minn., 133; 34 Cal., 48; 15 Am. St. Rep., 794; 73 Tex., 568.

In case of qualified privilege, in order to excuse the defendant, the communication must have been published in good faith, and with honest belief of its truth. Townshend's Lib. & Slan., § 209; 13 Am. & Eng. Ency. L., 411; Odgers' Lib. & Slan., 204; 4 Waite's Ac. & Def., p. 304.

The occasion may be privileged, but the communication may not be. It is then a question of good faith. Odgers' Lib. & Slan., 184.

There must be honest belief of truth, based upon such evidence as would reasonably induce belief. 3 Suth. Dam., 689.

If the publication is false and injurious, malice is presumed. Townshend's Lib. & Slan., 298.

A communication, to be privileged, must be made upon a proper occasion, from a proper motive, based upon probable cause. When so made, the law does not imply malice from the communication itself. Townshend's Lib. & Slan., 298 and note; *Holt* v. *Parsons*, 7 Am. Dec., 49.

For a very full and learned discussion of the law of privileged communications, we refer to the case of *Conroy* v. *Pittsburg Times*, 139 Pa., 334 (s. c., 21 At. Rep., 154). See also *White* v. *Nicholls*, 3 How. (U. S.), 266.

Where the language used is too violent for the occasion, or utterly disproportionate to the facts, there is evidence of malice to go to the jury. Odgers' Lib. & Slan., 280 *et seq.;* Townshend, 298.

Plaintiff is not restricted to extrinsic evidence of malice. Odgers, 276; Townshend, 399, 400, 514.

If there was malice, and the publication was libelous and false, the jury are to assess damages as in other particulars. 3 Suth. on Dam., 661; *Hubbard* v. *Rutledge*, 52 Miss., 581; *Railway Co.* v. *Quigley*, 21 How. (U. S.), 202.

A libelous communication to any third person is a sufficient publication. Townshend, § 95; Odgers, 227; *Huntley* v. *Ward*, 1 F. & F., 552; 6 C. B. N. S., 514.

The statements of the letter were false, and the superintendent made the positive assertions without knowledge or information. There was a motive for the letter. It was written to frighten the plaintiff and prevent him from prosecuting his claim for the loss of the valise. The superintendent took the chances, as any man does who attacks another, of the other's running or standing a fight.

The superintendent was the "head man," and writing the letter was within the scope of his duties. It would be absurd to say that one filling his office could not, without direct authority from the company, write such a letter. It is not necessary to show that he had authority to write a libelous letter.

If there were any objections to plaintiff's instructions, they were removed by those given for the defendant.

Argued orally by *W. L. Nugent*, for appellant.

COOPER, J., delivered the opinion of the court.

If it be conceded that the demurrer to the second plea should have been overruled, no reversible error would be shown, since, under the general issue, and under the third and fourth pleas, the defendant had advantage of all matters of defense set up in the second plea. In truth, the whole controversy was upon the facts set up by that plea, and which, upon the demurrer being sustained, were substantially restated in pleas three and four.

The defenses introduced were that Bond had no authority, as agent of the defendant, to write the letter, and if he had, that, under the circumstances, it was not a libel. The extent of the agency of Bond was fairly submitted to the jury, and it cannot be said that the verdict, by which it is found that he was the representative of the defendant in relation to the business in which the letter was written, is not supported by the evidence. Bond himself was examined as a witness, and did not deny his authority to act for the company. He professed by acting to have authority. Other executive officers of the company recognized his right so to act, and ample other evidence appears of record to show that his act was within the scope of his duty.

The court, by instructions to the jury, gave to the defendant the benefit of its defense that the letter alleged to be libelous was in reply to a communication from the plaintiff's attorneys. It told the jury that the circumstances created a qualified privilege, and that the defendant could only be liable upon proof of malice, or the absence of honest belief in the truth of the statements contained in the letter; in other words, that the defendant was not liable if its servant, in making reply to the letter of the attorneys, kept himself

within the privilege of the occasion, but was liable if he took advantage of the opportunity afforded by the occasion to maliciously libel him, or to write concerning him libelous matter which he did not believe to be true.

That Bond intended by his letter to charge the plaintiff with larceny of the lost baggage, or with having lawfully taken it away and then to have conceived the purpose of fraudulently recovering its value from the defendant by reason of his yet having its check in his possession, was admitted by him while testifying. It is true he affirmed that he honestly believed these facts to be true, but whether he did or did not so believe was a question for the determination of the jury, and his assertion is not conclusive of what the motive was. Starkie on Evidence, § 89; *Elmer v. Fessenden*, 151 Mass., 359.

One to whom application is made for information may, within the limits thereof, write or speak words which, under other circumstances would subject him to suit for libel or slander, but " the scope of the defamatory matter must not exceed the exigency of the occasion." Cook on Defamation, 35. Nor can he take license from the occasion to gratify his malice, or to state as facts libelous matter which he does not believe to be true. The exemption from responsibility for libel in privileged communications are of two classes: First, those of absolute privilege, in which no action lies, though the motive be malicious, of which class are included legislative and judicial proceedings. 13 Am. & Eng. Ency. L., 406; *Verner v. Verner*, 64 Miss., 321. Second, qualified privilege for libel, in which no inference of malice arises from the mere fact of the prejudicial statement, but the plaintiff must prove malice in fact. " The term privileged, as applied to a communication alleged to be libelous, means simply that the circumstances under which it was made are such as to repel the legal inference of malice, and to throw upon the plaintiff the burden of offering some evidence of its existence beyond the mere falsity of the charge."

*Lewis* v. *Chapman,* 16 N. Y., 369; *Wright* v. *Woodgate,* 2 C. M. & R., 573; *Toogood* v. *Spyring,* 1 C. M. & R., 181; *Delaney* v. *Jones,* 1 Esp., 193, 4 C. P.; *Laughton* v. *The Bishop,* L. R., 4 C. P., 504; *Spill* v. *Maule,* L. R., 4 Exch., 232; *Clark* v. *Molyneux,* L. R., 3 Q. B. Div., 237.

The plaintiff, recognizing the occasion of the publication as privileged, assumed the burden of establishing the malice of the defendant's superintendent, and by the verdict of the jury shows that he has supported his contention in that behalf. We are not prepared to say that the verdict is not correct.

The publication was complete when the libelous letter was received and read by Messrs. Dabney & McCabe, the plaintiff's attorneys. This necessarily follows from the establishment of the fact (settled by the verdict) that the defamatory statement was not covered by the privilege of the communication. The letter from the attorneys called for any lawful reply from the officers of the defendant, but it did not invite any malicious defamation of their client; and the defendant's superintendent, by exceeding the privilege, deprived his principal of any defense it might have had if he had kept within it.

*Affirmed.*