WILLIAM V. BRADLEY and Another, Plaintiffs, *v.* ARTHUR CONNERS and Another, Defendants.

Supreme Court, Richmond County, October 13, 1938.

*McElroy & Lucey,* for the plaintiffs.

*Purdy, Mason & Lamb,* for the defendants.

NOVA, J.   Motion to dismiss the amended complaint herein as to both the first and second causes of action on the ground that on the face thereof it does not state facts sufficient to constitute a cause of action.

The defendant Conners Marine Co., Inc., by the other defendant, Arthur Conners, president of the defendant Conners Marine Co., Inc., wrote a letter to the plaintiff United Marine Division, Local No. 333: " Attention: Mr. William V. Bradley, President and General Manager," the other plaintiff in the action.

In the letter was the following: " I am getting sick of this damn nonsensical business on the part of a bunch of racketeers."

The action is for libel.

The first objection to the complaint is that the words complained of in their context are not libelous *per se,* and that the complaint is accordingly defective in that there are no allegations of special damage.   The word racket is a product of prohibition.   Since that era it has become a part of our language, meaning the engaging in an occupation to make money illegitimately and implies continuity of behavior.   It is libelous *per se.   (Finkle* v. *Westchester Newspapers, Inc.,* 235 App. Div. 817; *Rusciano & Son Corp.* v. *Mihalyfi,* 165 Misc. 932.)

The second objection to the complaint is lack of publication of the libel, and the case of *Wells* v. *Belstrat Hotel Corp.* (212 App. Div. 366) is cited as authority for that proposition in that the mere dictation of a letter by an officer of a corporation to a stenographer in the business of the corporation is not sufficient to constitute publication.   The *Wells* case was decided in the First Department in 1925.   In 1931 the Court of Appeals, Judge CARDOZO writing, in the case of *Ostrowe* v. *Lee* (256 N. Y. 36), held that there is publication of a libel when a stenographer reads notes of a defamatory statement taken by himself at the dictation of another.   It is argued, however, that Judge CARDOZO's opinion applies only to a case when an individual dictates to his stenographer, but that the *Wells* case still applies where a corporate representative dictates to a corporate stenographer as in the present case.   While it may be true that the corporate stenographer is

part of the machinery of the corporation, and that the dictation and stenography are but links in the chain of the corporate business, still it cannot be gainsaid that the stenographer, whether for a corporation or an individual, has read the notes in order to transcribe them, and has thus become the required human agency which spells out publication. The evil is in the reading of the defamatory words by the stranger. It is only necessary that the stranger to the libel shall read and understand, and whether he or she is a corporate stenographer or the stenographer of a private individual, in fairness and reason, should not be the deciding factor.

The third objection to the complaint is that the plaintiff United Marine Division, Local No. 333, is an unincorporated association and, therefore, has no legal personality apart from the membership making up the association, and that where the alleged defamation is of a group, action must be brought by each one of the group claiming to have suffered damage from the defamation. However, section 12 of the General Associations Law, formerly the Joint-Stock Association Law, seems to me to dispose of this objection rather summarily by its language: " An action or special proceeding may be maintained, by the president or treasurer of an unincorporated association to recover any property, or upon any cause of action, for or upon which all the associates may maintain such an action or special proceeding, by reason of their interest or ownership therein, either jointly or in common."

The cases of *Giraud* v. *Beach* (3 E. D. Smith, 337) and *Stone* v. *Textile Examiners & Shrinkers Employers' Assn.* (137 App. Div. 655) are old cases holding that a body of men having no pecuniary interest in their associated character, and showing no engagement in any business, cannot maintain an action for libel. Here, however, the sixteenth allegation of the plaintiffs' complaint alleges that the words were published " with the intent and for the purpose of injuring this plaintiff in its reputation, business and credit."

Today many corporations other than profit-making corporations are organized for purposes vital to the welfare of society. Membership corporations now exist whose activities in the upbuilding and stabilizing of trade and labor, of community endeavor, are commendable. These corporations certainly have missions to perform as deserving of protection from the pen of libel as the needs of ordinary business. While credit may not be the cornerstone of their financial structure, it enters into the completed edifice. (Seelman on Libel, chap. IV, ¶ 86.)

A trade union engages in maintaining the right of labor to organize, to bargain collectively, and to zealously guard labor's right to have its say on the question of wages and hours. Its credit

and good name must be protected from the pen of libel whether it be a membership corporation, an unincorporated association or a joint-stock association. A labor union is organized for as high and laudable a purpose as a business corporation or a charitable organization. To publish that such an organization engages in a racket or that its members are racketeers should, if untrue, result in redress in an action of libel without proof of special damage.

Defendants' motion to dismiss the complaint is denied.