## MIMS v. METROPOLITAN LIFE INS. CO.

### No. 14084.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1952.

Rives, Circuit Judge, dissented.

Crampton Harris, George S. Brown and Robt. W. Smith, Birmingham, Ala., for appellant.

Lucien D. Gardner, Jr. and Leigh M. Clark, Birmingham, Ala., for appellee.

Before BORAH, STRUM and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This is an action for libel brought by appellant against appellee, a corporation. The trial court entered summary judgment for defendant below on the ground, amongst others, that there was no publication of the alleged libel, from which judgment plaintiff appeals.

After about 32 years in the employ of defendant company as a branch manager and in other capacities, plaintiff was discharged. He suspected that the reason for this discharge was his refusal to contribute $1.00 to the campaign fund of Senator Taft of Ohio, as suggested in a chain letter sent by defendant's supervisor of agencies in New York to a group of local agency managers, one of whom in turn forwarded a copy to plaintiff. In February, 1950, plaintiff replied to the agent from whom he received the copy that he was not in sympathy with Senator Taft's policies, and declined to contribute.

When plaintiff's services were discontinued early in 1951, he wrote to his friend Senator Sparkman of Alabama, asking the latter to investigate the cause thereof. Pursuant to this request, and with plaintiff's knowledge and approval, Senator Sparkman directed a letter of inquiry to the defendant's president in New York, summarizing Senator Sparkman's understanding of the situation, and concluding: "I shall appreciate your attention to this matter and your giving me such information as you may care to give."

Defendant's president replied at length by letter, denying that plaintiff's discharge was in any way due to his refusal to contribute to the campaign fund, and stating in effect that it was due to inefficiency and to unsatisfactory production in the branch agencies of which plaintiff was manager from 1934 to 1951, so that it finally became necessary to discontinue plaintiff's services. The letter concludes that the only mistake made by defendant was in giving plaintiff so long an opportunity to make good, in the hope that he might improve. That letter is the basis of this suit. Plaintiff asserts that the statements therein are false, made with malice, and are therefore libelous and unprivileged.

The letter in question was dictated by the president of the defendant company to a company-employed stenographer, who wrote it. It was then mailed to Senator Sparkman in reply to his inquiry, and was received and read by him in Washington, D. C. Plaintiff relies on these circumstances as a sufficient publication to support an action for libel against the corporate defendant. It is not charged that the letter was seen by any other person.

Publication is essential to libel, and the publication must be made to one or more third parties. It is held in New York that dictation of a libelous letter by an individual to his own employee constitutes a sufficient publication in an action against the individual who dictated the letter, as in such circumstances the stenographer is a third party. Ostrowe v. Lee, 256 N.Y. 36, 175 N.E. 505; Horovitz v. Weidenmiller, Sup., 53 N.Y.S.2d 379; Nelson v. Whitten, D.C., 272 F. 135.

But this is not such a case. Here, the letter was written by, and the action is against, a corporate defendant which can act only through its agents. Both the person who dictated the letter, and the stenographer who transcribed it, were employed by and acting for the corporation in the performance of a single corporate function, each supplying a component part thereof. When the letter was thus dictated and transcribed, it was not the act of two individuals acting separately. It was one corporate entity acting through two instrumentalities, neither of whom is a third party as respects the corporation, because each is acting as a part of the corporate entity in the performance of a single corporate act, the production of the letter, in the regular course of their duties.

This court has held that where the language complained of was communicated only by one corporate officer to another in the regular course of the corporation's business, such communication did not amount to a publication which would support an action for libel. Biggs v. Atlantic Coast Line R. Co., 5 Cir., 66 F.2d 87. Although there is one case to the contrary, Bradley v. Conners, 169 Misc. 442, 7 N.Y.S. 2d 294, the weight of authority in New York, where the letter in question was dictated and transcribed, is that mere dictation of libelous matter by a corporate officer or employee to a stenographer also employed by the corporation, in the regular course of the corporation's business, is not such a publication as will support an action for libel against the corporation itself, as in such circumstances the stenographer is not a third party. Wells v. Belstrat Hotel Corp., 212 App.Div. 366, 208 N.Y.S. 625; Owen v. J. S. Ogilvie Pub. Co., 32 App.Div. 465, 53 N.Y.S. 1033; Loewinthan v. Beth David Hospital, Sup., 9 N.Y.S.2d 367. This rule is harmonious with our own holding in Biggs v. Atlantic Coast Line R. Co., supra. This is not such a case as Kennedy v. James Butler, 245 N.Y. 204, 156 N.E. 666, in which a corporate defendant communicated libelous matter to employees who had no part in producing the writing, thus exceeding the normal necessities of preparing the writing. If the language of this letter had been communicated to an employee of the corporation whose duties were unconnected with the process by which the letter was produced, such communication might be regarded as an actionable publication. But such is not the case here. Upon the authorities above cited, we hold that there was no sufficient publication of the letter in New York.

■■ We have been directed to no decision squarely in point in the District of Columbia, as to whether writing the letter to Senator Sparkman, in the circumstances here involved, would constitute publication, although that jurisdiction follows the established general rule that it is essential to liability for either libel or slander that the defamatory language be communicated to some one other than the person defamed. Washington Annapolis Hotel Co. v. Riddle, 83 U.S.App.D.C. 288, 171 F.2d 732. Compare National Disabled Soldiers' League v. Haan, 55 App.D.C. 243, 4 F.2d 436. It is the law of Alabama, however, which is the state of the forum in which this action was brought, and the state of which plaintiff is a citizen, that if the language complained of was uttered only to the complaining party or to his agent representing him in the matter discussed in the communication, it is not such a publication as will support an action for slander. Particularly is this true where the communication was solicited by the plaintiff or his agent. McDaniel v. Crescent Motors, 249 Ala. 330, 31 So.2d 343, 172 A.L.R. 204. This rule prevails in many other jurisdictions, though there is authority to the contrary. See note, 172 A.L.R. 208.

■■ In making the inquiry above mentioned, Senator Sparkman was acting at the express request of plaintiff and with his approval,—virtually as plaintiff's *alter ego*. Defendant's president replied to the person through whom the inquiry was thus made. The letter complained of having been solicited by plaintiff, through his representative Senator Sparkman, plaintiff thereby impliedly consented that defendant reply through the same representative. In contemplation of law it was a reply to the plaintiff himself. Without plaintiff's solicitation, the letter would not have been written. Upon the authorities above cited, we hold that there was no sufficient publication in the District of Columbia. The statements in the letter sued on do not exceed the scope of the inquiry so as to render the publication actionable because excessive, within the doctrine of Massee v. Williams, 6 Cir., 207 F. 222.

■ Plaintiff asserts that the language of the letter was uttered with malice, thus destroying the qualified privilege which would otherwise attend it. But we do not reach the matter of privilege or malice until publication has been established, which here has not been done.

Affirmed.

RIVES, Circuit Judge (dissenting).

There was publication, I think, in New York; and the evidence made a strong, if not compelling, case for the jury that there was also publication in Washington.

The fact that a corporation is an artificial entity, and therefore can act only through its agents, does not give it any added immunity for its torts. Corporate agents are just as much individual human beings as are the agents of natural persons. The same rules should apply to both. In Bander v. Metropolitan L. Ins. Co., 313 Mass. 337, 47 N.E.2d 595, 602, the court stated:

"We perceive no good reason why immunity from liability for defamation communicated by one agent to another should be accorded to an enterprise conducted in the corporate form and denied to an enterprise conducted by an individual or a partnership. The argument that a communication between agents of the same corporation is not a communication to a third person is not impressive in dealing with such a subject as defamation and would apply with almost equal force as between two agents of the same individual or partnership. * * * The defence of privilege is widely available in appropriate instances and, we think, furnishes as great protection as ought to be allowed."

The keynote was sounded by Mr. Justice Bouldin of the Alabama Supreme Court as follows:

"But it is urged that where liability is sought to be fastened upon a principal, which must rest upon an act of the agent, done in the scope of his employment, the dictation of a letter by one agent to another, who transcribes it, must be considered one act, in so far as it affects the principal. We think this contention ignores the essential nature of the libel. In the case supposed, the agent who dictates the letter causes it to be written, and, so read, is for the moment the alter ego of the principal. The injury does not consist in the loss of esteem by an absent and may be corporate employer. The evil effect is in the loss of esteem by the stenographer in person, and not in any relation to the chief agent nor the common employer." Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290, 292.

As said by the North Dakota Supreme Court in Rickbeil v. Grafton Deaconess Hospital, 74 N.D. 525, 23 N.W.2d 247, 255, 166 A.L.R. 99, 108:

"The personal rights of the individual to be free from defamation of character are paramount to any exigencies of business and the stenographer who types and the office-boy who copies are individuals with personalities even if mere employees, whether the relationship of master and servant exists or whether all parties concerned are employees of an employer common to each."

In that case, the North Dakota Supreme Court reviewed the New York decisions, considering *arguendo* whether any such distinction existed in New York, and concluded that it did not.

The controlling case in New York, it seems to me, should be Ostrowe v. Lee, 256 N.Y. 36, 175 N.E. 505, where Judge Cardozo's opinion settled beyond dispute that publication results from dictation, where the stenographic notes have been transcribed. That case involved a stenographer employed by an individual, but there is nothing in Judge Cardozo's opinion to indicate that the rule would be different if the stenographer were employed by a corporation.

That ground of distinction was presented to two different lower court judges of the State of New York in October and November, 1938. One of them simply held that the New York cases earlier than Ostrowe v. Lee, supra, were still good law and that dictation to the secretary of a corporation did not amount to publication. Loewinthan v. Beth David Hospital, Sup., 9 N.Y.S.2d 367. The other held to the contrary and seems to me the better reasoned:

"It is argued, however, that Judge Cardozo's opinion applies only to a case where an individual dictates to his

stenographer, but that the Wells Case [Wells v. Belstrat Hotel Corp., 212 App.Div. 366, 208 N.Y.S. 625] still applies where a corporate representative dictates to a corporate stenographer as in the present case. While it may be true that the corporate stenographer is part of the machinery of the corporation, and that the dictation and stenography are but links in the chain of the corporate business, still it cannot be gainsaid that the stenographer, whether for a corporation or an individual, has read the notes in order to transcribe them, and has thus become the required human agency which spells out publication. The evil is in the reading of the defamatory words by the stranger. It is only necessary that the stranger to the libel shall read and understand, and whether he or she is a corporate stenographer or the stenographer of a private individual, in fairness and reason, should not be the deciding factor." Bradley v. Conners, 169 Miss. 442, 7 N.Y.S.2d 294, 295.

An earlier federal case from New York, Nelson v. Whitten, D.C., 272 F. 135, 136, points up the reasoning for the rule which would apply equally to stenographers for corporations and to stenographers for partnerships or individuals.

"The reasoning is that a stenographer is an individual, just as any other employee; that there is no basis for the belief that a communication made to one occupying such a position would be less injurious to plaintiff than if it were made to any other of defendant's employees, and that, as said by Lopes, L. J., in Pullman v. Hill, (1891) 1 Q.B. 524:

" 'It is said that business cannot be carried on if merchants may not employ their clerks to write letters for them in the ordinary course of business. I think the answer to this is very simple. I have never yet heard that it is in the usual course of a merchant's business .to write letters containing defamatory statements. If a merchant has occasion to write such a letter, he must write it himself and make a copy of it himself, or he must take the consequences.'

"This argument is convincing and is adopted."

As to the publication in Washington, the majority holds that Senator Sparkman was acting merely as plaintiff's representative, virtually his *alter ego*. It seems to me that a client may be libelled even to his own attorney. If plaintiff can prove, as he alleges, that the statements in defendant's letter were false and malicious and made with intent to defame, then they were not responsive to Senator Sparkman's request for "such information as you may care to give." The question, I think, is more one of qualified privilege than of publication, and on the issue of qualified privilege the case comes within the rule announced by the Mississippi Supreme Court in Alabama & V. Ry. Co. v. Brooks, 69 Miss. 168, 13 So. 847:

"The publication was complete when the libelous letter was received and read by Messrs. Dabney & McCabe, the plaintiff's attorneys. This necessarily follows from the establishment of the fact (settled by the verdict) that the defamatory statement was not covered by the privilege of the communication. The letter from the attorneys called for any lawful reply from the officers of the defendant, but it did not invite any malicious defamation of their client; and the defendant's superintendent, by exceeding the privilege, deprived his principal of any defense it might have had if he had kept within it." 13 So. 847, 849.

It seems clear to me, however, that the matter did not concern merely the plaintiff but was of great public interest and that Senator Sparkman was properly acting not as a representative of the plaintiff, but in his capacity as a Senator of the United States. He was giving the defendant an opportunity to offer an explanation before referring the matter to the Senate Elections Subcommittee. Certainly the jury could have found that Senator Sparkman was not the plaintiff's *alter ego*. I therefore respectfully dissent.