### ARVEY CORPORATION

v.

### William PETERSON and Berlin and Jones Company, Division of Harrison-Blaine, Inc.

Civil Action No. 25384.

United States District Court
E. D. Pennsylvania.

Oct. 30, 1959.

Herbert A. Fogel, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiff.

Lloyd A. Good, Jr., Roper & Caldwell, Philadelphia, Pa., for William Peterson, defendant.

EGAN, District Judge.

This matter is now before the Court on plaintiff's motion to dismiss the two counts of the amended counterclaim filed by William Peterson.

The second count of the counterclaim is based upon an alleged libelous letter written by the plaintiff and the motion to dismiss raises some very novel questions in the law of defamation.

 Under generally recognized conflict of laws principles, the substantive law to be applied in a tort action is that of the place of the wrong; in this case, the place where the defamatory statement is communicated. Restatement, Conflict of Laws, 377(5); Allison v. Mennonite Publication Board, D.C. W.D.Pa.1954, 123 F.Supp. 23; Hart-

mann v. Time, Inc., 3 Cir., 1947, 166 F.2d 127, 1 A.L.R.2d 370; Campbell v. Willmark Service System, Inc., 3 Cir., 1941, 123 F.2d 204.

The plaintiff first contends that as a matter of law, the letter set forth below is not defamatory:

"Registered Mail
Return Receipt Requested
TRANSO ENVELOPE COMPANY
Robert B. Shapiro
Executive Vice President
 3542 North Kimball Avenue
 Chicago 18, Illinois
 September 18, 1958.
Wesley H. Caldwell, Esq.,
618 Western Saving Fund Bldg.
Philadelphia 7, Pennsylvania
 Re: William R. Peterson

Dear Mr. Caldwell:

Reference is made to your letter of September 12, 1958, concerning the above former employee, directed to our Eastern Division, which has been referred to the undersigned.

Your investigation and information is apparently in error. There is no balance of any salary due Mr. Peterson for any services rendered by him for which he has not been paid. On the contrary, among other things, Mr. Peterson is indebted to the Company in the sum of $1,329.-57, overdraw of advances made to him during the period of his employment.

A demand for repayment of the above has been delayed, pending completion of the investigation which is still incomplete. This involves areas of possible serious liability concerning your client. We are still awaiting the opinion of the Federal District Attorney.

In the interest of assistance to your client, you may wish to check into this further. Upon doing so, it may be advisable to confer with our Company counsel, Mr. Louis A. McLean, at Independence 3–1400

concerning the same and your client's legal accountability and liabilities.

Yours very truly,
TRANSO ENVELOPE COMPANY
R. B. Shapiro
Robert B. Shapiro
Executive Vice President

RBS:b
CC: Mr. W. R. Peterson
29 Hamilton Road, RD 2
Ambler, Pennsylvania."

Initially the Court must determine whether the letter is capable of the meaning ascribed to it by the innuendo and whether such meaning is capable of being defamatory. Restatement, Torts, 614; MacRae v. Afro-America Company, D.C.E.D.Pa.1959, 172 F.Supp. 184.

▆▆▆ The fact that the words may also be susceptible of an innocuous interpretation will not defeat an action for libel. At the present stage of the proceedings, it is not necessary to determine whether in fact the letter is defamatory but only whether it is capable of being so, since a jury will determine whether it actually conveys the defamatory meaning ascribed to it.

It is the defendant's contention that the letter charges him "with fraud, fraudulent acts, conversion and criminal liability." Certainly one could not say as a matter of law that the following sentences are not reasonably susceptible of the meaning that defendant ascribes to them:

"A demand for repayment of the above has been delayed, pending completion of the investigation which is still incomplete. This involves areas of possible serious liability concerning your client. We are still awaiting the opinion of the Federal District Attorney."

Plaintiff has cited the case of Pittsburgh, A. & M. Pass. Railway Co. v. McCurdy, 1886, 114 Pa. 554, 8 A. 230, as controlling in this situation. In the McCurdy case, the plaintiff was a discharged railway conductor who continued to ride free on an employee ticket. The following notice was posted in the waiting room by the Company:

"H. B. McCurdy has been discharged for failing to ring up all fares collected. * * *"

The plaintiff's action was based on the allegation that failing to ring up fares charged him with embezzlement. A verdict for the plaintiff was reversed by the Pennsylvania Supreme Court which held that the words were not equivocal or ambiguous and that they did not necessarily imply fraud or dishonesty.

However, this letter is different and goes much further. While a charge of overdrawing an account may be perfectly innocent, the use of the additional words "possible serious liability" and "we are still awaiting the opinion of the Federal District Attorney" are reasonably capable of imputing criminal conduct on the part of the defendant and this is especially true when the matter has been referred to a "Federal District Attorney." The words of this letter need not be enlarged upon or expanded beyond a fair interpretation to state that they are capable of the meaning ascribed to them; otherwise, the Court would have to engage in the subtleties of semantics in every case involving artful techniques of defamation.

By far the most interesting points raised in plaintiff's motion relate to the question of publication. "Publication" is a word of art in the law of defamation and relates to the issue of whether the defamatory matter was communicated to some third person. Restatement, Torts, 577.

From the record before us, the only instances of publication are the dictation of the letter in Chicago, Illinois, to a stenographer of plaintiff corporation and the receipt of the letter by Wesley H. Caldwell, Esq., the attorney for Peterson. The initial "b" in the lower left hand corner next to the initials of the vice-president of the corporation indicates the dictation to and transcription by a person represented by the initial "b".

Of course our discussion, while limited to the above individuals, will not preclude the defendant from alleging and showing a publication to someone else. Plaintiff's position is that neither the stenographer nor the defendant's attorney constitute a third person so far as publication is concerned.

First, as to the secretary, plaintiff's position is that dictation by an officer of a corporation to a secretary, who is also employed by the corporation in the regular course of business, is not a publication since the secretary is not a third person. The basis of this theory is that the corporation, as an entity, is only performing a single act through two instrumentalities. Of course, the argument contra is to the effect that the secretary is a third person, as is anyone else, and has a distinct personality, and to adopt the above fiction denies the realities of the situation. However, we will not go into a discussion of the various views taken on the subject since the cases throughout the country are certainly split.[1] There are no Illinois or Pennsylvania cases directly on point.

In discussing the issue of communication between agents of a corporation, a lower Court in Pennsylvania stated:

"However we need not decide whether there was sufficient proof of publication there because the accusation was repeated in the manager's office, and as is pointed out in the Restatement of Torts, vol. 3, page 196, a communication by one agent to another agent of the same principal is a publication."

Long v. Great Atlantic & Pacific Tea Co., 1938, 29 Delaware Co.R. 512. This, of course, is analogous to our situation. In many areas involving questions not definitely resolved by the Supreme Court of Pennsylvania, this Court has adopted the view of the Restatement of Torts which has taken the following position:

"h. *Dictation to stenographer.* The dictation of a defamatory letter to a stenographer who takes shorthand notes thereon is itself a publication of a libel by the person dictating the letter even though the notes are never transcribed nor read by the stenographer or any other person. As to the conditions under which such a dictation is privileged, see § 604."

"i. *Communication by one agent to another agent of the same principal.* The communication within the scope of his employment by one agent to another agent of the same principal is a publication not only by the first agent but also by the principal and this is so whether the principal is an individual, a partnership, or a corporation. As to the conditions under which such a communication is privileged, see § 596."

Many of the older cases made little or no distinction in such a situation between the issue of publication and privilege. However, this distinction is recognized by the Restatement and many of the later cases which hold that there is a publication, although, under certain circumstances, it may be privileged. Therefore we adopt the view that a dictation by an officer of a corporation to his secretary is a publication.

This will not upset a corporation's method of correspondence since it may

1. The following cases indicate that a communication to an employee or agent of a common employer would be a publication: Berry v. City of New York Ins. Co., 1923, 210 Ala. 369, 98 So. 290; Kelly v. Loew's, Inc., D.C.D.Mass.1948, 76 F.Supp. 473; Mick v. American Dental. Ass'n, 1958, 49 N.J.Super. 262, 139 A.2d 570; Kennedy v. James Butler, Inc., 1927, 245 N.Y. 204, 156 N.E. 666.

Contra: Western Union Tel. Co. v. Lesesne, 4 Cir., 1952, 198 F.2d 154; Mims v. Metropolitan Life Ins. Co., 5 Cir., 1952, 200 F.2d 800; Beck v. Oden, 1941, 64 Ga.App. 407, 13 S.E.2d 468; Anderson v. Southern Ry. Co., 1953, 224 S.C. 65, 77 S.E.2d 350; Watson v. Wannamaker, 1950, 216 S.C. 295, 57 S.E.2d 477; Satterfield v. McLellan Stores Co., 1939, 215 N.C. 582, 2 S.E.2d 709.
See annotation 166 A.L.R. 114.

still assert the defense of privilege. We feel that this is the more modern and better reasoned view.

Turning to the question of the communication of the letter to the attorney for Peterson, plaintiff again contends that there is no publication since the attorney is the agent or alter ego of the plaintiff and as such is not a third person within the meaning of the term "publication." The letter was an answer to the request of Peterson's attorney that the plaintiff pay Peterson the wages due on the contract.

It is argued that especially in a case in which a person hires an attorney to write concerning a matter of mutual concern a letter of reply to the attorney is the same as sending it to the attorney's principal and client. Again, there are no Pennsylvania authorities directly on point and the decisions over the country are split.[2]

In a criminal case, Commonwealth v. Pavitt, 1883, 16 Phila., Pa., 478, the Court stated:

> "This reply was written to the attorney of the prosecutor and sent to him and by him received. Under the authority of Callan v. Gaylord, 3 Watts [321] 324, this makes out a publication of the alleged libel."

The Restatement of Torts has taken the position that a communication to an agent of the defamed party is a publication.

> "*Publication to agent.* The fact that the defamatory matter is communicated to an agent of the defamer does not prevent it from being a publication sufficient to constitute actionable defamation. Such a publication may be privileged, however, under the rule stated in § 593. So too, the communication to a servant

or agent of the person defamed is a publication although if such communication is in answer to a letter or a request from the other or his agent, the publication may not be actionable under the rule stated in § 558."

Of course, if a person procures and invites a defamatory communication, he cannot be heard to complain. However, there is nothing in this record to indicate that Peterson invited a defamatory letter when he asked his attorney to request the payment of wages allegedly due. A person's reputation can be damaged as much in the eyes of his attorney as those of anyone else. The *alter ego* theory denies the individuality of the attorney or agent. Therefore we hold that the communication to the attorney for Peterson is a publication. Here again, the corporation is not without a defense since it may be that such a communication is privileged.

Plaintiff contends that even conceding the defamatory nature of the letter and its publication, the communication is privileged. Generally, privilege is a matter of defense and the burden is on the party alleging it.

12 P.S. "§ 1584a—Burden of Proof.

"1. * * *

"2. In an action for defamation, the defendant has the burden of proving, when the issue is properly raised.

"(a) * * *

"(b) The privileged character of the occasion on which it was published."

This complaint cannot be dismissed unless it shows on its face that the communication is privileged. There are no facts to substantiate such a claim

2. The following cases indicate that a communication to an attorney or agent is a publication: Alabama & V. Ry. Co. v. Brooks, 1891, 69 Miss. 168, 13 So. 847; Murphy v. Johns-Manville Products Corp., 1957, 45 N.J.Super. 478, 133 A.2d 34.

Contra: Mims v. Metropolitan Life Ins. Co., 5 Cir., 1952, 200 F.2d 800; Kirk Jewelers v. Bynum, 1954, 222 Misc. 134, 75 So.2d 463. See Annotation 172 A. L.R. 208.

since no answer has been filed and the pleadings themselves do not indicate privilege. A communication is privileged if made upon a proper occasion, in a proper manner, from a proper motive and upon reasonable and probable cause, none of which appear in this record.

■ Another ground for dismissal raised by plaintiff is the failure of defendant to plead the place of publication of the libel as required by Rule 9(f), 28 U.S.C.A. In Pentz v. Downey, D.C.E.D. Pa.1953, 110 F.Supp. 642, our colleague, Judge Grim held that a pleading in a defamation action was defective for failure to allege the place of publication. However, thirty days were granted in which to amend this defect. Therefore, the defendant will be granted thirty days in which to amend his counterclaim to allege the time and place of publication.

Any issue as to the damages claimed and the basis thereof can be determined by plaintiff by use of the discovery processes.

■ Now that we have discussed the issues relating to the libel action, we come to count I, claiming $8,333.30 for wages due Peterson as a result of a breach of contract by plaintiff for wrongfully discharging him. Plaintiff contends that since this counterclaim is permissive only, it should be dismissed for lack of jurisdictional amount. However, a careful reading of the pleadings indicates that this counterclaim is compulsory and not permissive since it arises out of the transaction or occurrence that is the subject matter of plaintiff's claim. The test generally applied by the Courts in determining whether a counterclaim is compulsory is whether there is a logical relationship between the claim and counterclaim.

The gist of plaintiff's complaint is the alleged misconduct of the defendant while in its employ, such as breach of fiduciary duty, interference with contractual relations, as a result of which Peterson was discharged. Plaintiff seeks various forms of relief, including a return of wages already paid to defendant.

Therefore it should make no difference in this case upon what legal theory plaintiff is proceeding since it is the conduct of the parties in this occurrence that will determine who shall prevail.

■ A compulsory counterclaim being ancillary to the main claim needs no independent jurisdictional grounds to support it and this is so even as to amount. 3 Moore's Federal Practice, par. 13, 15.

Order

And now, this 30th day of October, 1959, it is hereby ordered that:

(1) Plaintiff's motion to dismiss the counterclaim is denied.

(2) Defendant, Peterson, may amend his complaint within thirty (30) days to allege the time and place of the publication of the alleged libel.